Joseph R. REISINGER, Plaintiff,

v.

LUZERNE COUNTY, Luzerne County Tax Claim Bureau, Mary Dysleski, Stephen A. Urban, Neil T. O'Donnell, James P. Blaum, The Cadle Company II, Inc., Daniel C. Cadle, Michael Kermec, Doug Harrah, Kevin T. Fogerty, Tina Randazzo, Nova Savings Bank, and Craig J. Scher, Defendants.

Civil Action No. 3:09–CV–1554.

United States District Court, M.D. Pennsylvania.

Feb. 2, 2010.

Peter G. Loftus, Loftus Law Firm, P.C., Waverly, PA, for Plaintiff.

Bruce K. Anders, Law Office of Bruce K. Anders, LLC, Mark W. Bufalino, Elliott Greenleaf & Dean, Wilkes Barre, PA, John G. Dean, Joseph J. Joyce, III, Elliott Greenleaf & Siedzikowski, P.C., Scranton, PA, Kevin T. Fogerty, Law Offices of Kevin T. Fogerty, Allentown, PA, Anthony P. Tabasso, Klehr Harrison Harvey Branzburg LLP, Philadelphia, PA, for Defendants.

## *MEMORANDUM*

RICHARD P. CONABOY, District Judge.

Here we consider the three motions to dismiss pending in this action in which Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and pendant state law claims. With these motions, all Defendants who have acknowledged service seek dismissal.[1] The Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(1) and (6) Filed on Behalf of Defendants, The Cadle Company II, Inc., Daniel C. Cadle, Michael Kermec, Doug Harrah, Tina Randazzo and Kevin Fogerty (Doc. 25) ("Cadle Defendants' Motion") was filed on October 12, 2009, and became ripe on December 18, 2009, with the filing of their reply brief (Doc. 41). The Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) (Doc. 28) ("Nova Motion") was filed by Defendant Nova Savings Bank on October 16, 2009, and became ripe on December 7, 2009, with the filing of Plaintiff's Brief in Opposition to the Defendants' 12(b)(1) and 12(b)(6) Motions (Doc. 38) in that Defendant Nova did not file a reply brief. Defendants Luzerne County, Luzerne County Tax Claim Bureau, Mary Dysleski, Stephen A. Urban, Neil T. O'Donnell and James Blaum's Motion to Dismiss (Doc. 30) ("County Defendants'

---

1. The record does not indicate that Defendant Craig J. Scher, identified in the Complaint as an "agent, servant and/or employee of Nova" (Doc. 1 ¶ 18), acknowledged service or responded to the Complaint in any way.

Motion") was filed on October 16, 2009, and became ripe on December 21, 2009, with the filing of their reply brief (Doc. 41). For the reasons discussed below, we conclude dismissal of this action is appropriate.

### I. Factual Background [2]

#### A. Parties

Plaintiff owned twenty-six rental properties in and around Wilkes–Barre, Pennsylvania, which are the properties at issue in this lawsuit. (Doc. 1 ¶ 19.) Plaintiff is a licensed attorney with a masters degree in taxation. (Doc. 26 at 2.)

There are fourteen (14) Defendants named in this action. Based on the allegations in the Complaint and the pending motions, Defendants fall into three categories: County Defendants, Cadle Defendants, and Nova Defendants.

County Defendants are the following: 1) Defendant Luzerne County, the county in which the properties are located; 2) Luzerne County Tax Claim Bureau; 3) Mary Dysleski, Interim Director of the Tax Claim Bureau; 4) Stephen Urban, Luzerne County Commissioner; 5) Neil O'Donnell, Solicitor Assistant for the Tax Claim Bureau; and 6) James Blaum, County Solicitor for Luzerne County. (Doc. 1 ¶¶ 5–10.) Individuals are sued in both their individual and official capacities. (*Id.* ¶¶ 7–10.)

Cadle Defendants are the following: 1) The Cadle Company II, Inc. ("Cadle"); 2) Daniel C. Cadle, President and Owner of Cadle; 3) Michael Kermec, an agent, servant and/or employee of Cadle who managed various properties for Cadle; 4) Doug Harrah, an agent, servant and/or employee of Cadle who managed various properties for Cadle; 5) Kevin T. Fogerty, an agent, servant and/or employee of Cadle who acted as an attorney for Cadle; and 6) Tina Randazzo, an agent, servant and/or employee of Cadle who managed various properties for Cadle. (Doc. 1 ¶¶ 11–16.) Individuals are sued in both their individual and corporate capacity. (*Id.* ¶¶ 12–16.)

The Nova Defendants are the following: 1) Nova Savings Bank ("Nova"); and 2) Craig J. Scher, an agent, servant and/or employee of Nova. (Doc. 1 ¶¶ 17–18.) Defendant Scher is sued in both his individual and corporate capacity. (*Id.* ¶ 18.)

#### B. Escrow Agreement

As of January 1, 1998, the twenty-six rental properties owned by Plaintiff which are the subject of this action (all located in Luzerne County) were collateral for twenty-nine notes and twenty-six mortgages. (Doc. 1 ¶ 19.) For the period of December 17, 1998, through September 28, 2004, Defendant Nova allegedly owned the notes and mortgages. (*Id.* ¶ 20.) Because Plaintiff did not pay all of the real estate taxes due on the twenty-six properties and

---

**2.** In Plaintiff's Brief in Opposition to Defendants' 12(b)(1) and 12(b)(6) Motions (Doc. 38), Plaintiff relies upon the assertions set out in his Complaint. (Doc. 1.) We do the same in most instances. However, Plaintiff's Complaint does not mention significant events related to the subject property which occurred before he filed the Complaint. In his opposition brief (Doc. 38), Plaintiff does not provide information about significant events which occurred after he filed the Complaint. We rely on court documents and Defendants' filings for this background information. In the Factual Background section of his opposition brief (Doc. 38), Plaintiff did not object to any facts asserted by Defendants in their submissions to the Court. (*See* Doc. 38 at 7.) We further note that the "Basic Context" section of Plaintiff's Complaint is not a model of clarity and is replete with non-factual allegations and legal conclusions. (*See* Doc. 1 at 8–39.) We have attempted to cull potentially relevant facts from the extensive "Basic Context" section and present other allegations and legal conclusions in summary form in the margin at the end of this section.

substantial arrearages had accrued, the properties were going to be sold by the Luzerne County Tax Claim Bureau ("Tax Claim Bureau") in 2003. (*Id.* ¶¶ 21–22.)

In February 2003, Plaintiff requested Nova to amend the amount of his debt service so he could timely pay his real estate taxes. (Doc. 1 ¶ 23.) After conversations and correspondence with Defendant Scher, Plaintiff secured a draft of a loan agreement to be used to establish an escrow account for the payment of the properties' real estate taxes. (*Id.* ¶ 24.) Plaintiff gave representatives of the Tax Claim Bureau a copy of the draft. (*Id.* ¶ 25.) The Tax Claim Bureau agreed to the draft escrow tax payment arrangement and consented not to list the twenty-six properties for the next tax sale. (*Id.* ¶ 26.) Based on the Tax Claim Bureau's approval of the loan agreement, Plaintiff signed the agreement with Nova. (*Id.* ¶ 27.) The arrangement was that all of the funds allocable to the real estate taxes for the properties would be paid by Plaintiff to Nova and Nova would remit the funds to the Tax Claim Bureau. (*Id.* ¶ 28.)

### C. Taxes Escrowed

Pursuant to this agreement, along with his monthly debt service payment Plaintiff submitted a stipulated amount of funds to be held in escrow by Nova which Nova was then to pay to the Tax Claim Bureau for real estate taxes related to his twenty-six properties on a timely basis. (Doc. 1 ¶ 30.) Between February 2003 and September 21, 2004, Plaintiff paid a total of $67,982.72 of real estate tax escrow account payments to Nova. (*Id.* ¶ 32.) Nova, at the direction of Defendant Scher, never made any tax

escrow account payments to the Tax Claim Bureau. (*Id.* ¶ 33.)

On or about September 21, 2004, Nova apparently assigned all right, title and interest to the notes and mortgages to Defendant Cadle. (Doc. 1 ¶ 31.) After the alleged assignment, Cadle notified Plaintiff that it was in possession of only $37,234.00 in real estate tax escrow account payments that Nova had been holding and transferred to Cadle rather than the $67,982.72 which Plaintiff had paid to Nova leaving a balance of $30,748.72 unaccounted for. (*Id.* ¶ 34.)

Plaintiff confirmed that as of the filing of the Complaint, the $30,748.72 in real estate tax escrow account payments and all accrued interest of $23,431.20 through June 30, 2009, (total of $54,179.92), and all applicable penalties, have never been remitted by Nova to the Tax Claim Bureau in violation of the loan agreement. (Doc. 1 ¶ 35.) Nova has also refused to return the funds to Plaintiff. (*Id.* ¶ 67.)

After Cadle acquired the notes and mortgages from Nova on September 21, 2004, until December 13, 2006, Plaintiff paid Cadle real estate tax escrow payments of $57,000.00 plus $741.29 in funds that were remitted by Nova to Cadle but not forwarded to the Tax Claim Bureau. (Doc. 1 ¶ 37.) At the direction of Defendant Daniel Cadle, Defendant Cadle has not forwarded any of the above real estate tax escrow account payments (paid by Plaintiff to Cadle) to the Tax Claim Bureau.[3] (*Id.* ¶ 38.) This $57,741.29 plus accrued interest through June 30, 2009, of $22,031.08–for a total of $79,772.37–has been used by Cadle for its own use. (*Id.* ¶ 39.)

---

**3.** Cadle Defendants assert that Plaintiff's allegations on this matter are false but that this fact dispute, which is still in litigation in several state court cases, need not be decided to determine the propriety of their motion to dismiss. (Doc. 26 at 3 n. 3.)

## D. Mortgagee–in–Possession

In September 2006[4] Defendant Cadle filed an action in the Luzerne County Court of Common Pleas captioned *The Cadle Company II, Inc. v. Joseph R. Reisinger, Tina Bolen and Tina Randazzo* (Civil Action No. 10356–2006). (Doc. 26 at 4.) According to Cadle Defendants, the purpose of the action was to recover rents from the Reisinger properties against which it held mortgages, and by that time the Trustee in Plaintiff's bankruptcy case had abandoned these twenty-six properties because they lacked equity beyond the liens for taxes and mortgages. (*Id.* (*citing* Ex. C*)*.) In this state court case, Cadle filed a petition for a preliminary injunction which a Luzerne County Court of Common Pleas judge granted. (Doc. 1 ¶ 40.) Pursuant to that Order, "Cadle was allowed to collect rents from tenants for the properties against which it held mortgages, and was conditioned on Cadle posting a Bond, which it promptly delivered to the Luzerne County Prothonetary." (Doc. 26 at 4.) Plaintiff characterizes this as the court "allowing Cadle to serve as a mortgagee in possession." (Doc. 1 ¶ 40.) Plaintiff filed an appeal of the Luzerne County Court of Common Pleas Order and the Pennsylvania Superior Court granted a writ of supersedeas on January 19, 2007, reinstating Plaintiff as the manager of his properties. (Doc. 1 ¶ 41.) Thus, Plaintiff obtained a temporary stay of the injunction Order. (Doc. 26 at 4.)

Following Plaintiff's reinstatement as the manager of his properties, at the direction of Defendant Daniel Cadle, Defendants Cadle, Kermec, Randazzo, and Fog-

erty, in conjunction with others interfered with Plaintiff's resumption of the management of his properties.[5] (Doc. 1 ¶ 42.)

On August 23, 2007, the Pennsylvania Superior Court affirmed the Court of Common Pleas ruling thereby again allowing Cadle to serve as "mortgagee-in-possession." (Doc. 26 at 5.)

For the period from December 13, 2006, to the date of this Complaint (August 13, 2009), as mortgagee-in-possession of the twenty-six properties, Cadle partially accounted for the collection of rents, indicating collections totaling approximately $424,508.99 and the payment of expenses, totaling approximately $187,189.47, leaving a balance of net rents of $237,319.51. (Doc. 1 ¶ 46.)

None of this fund balance had been applied by Cadle to the Tax Claim Bureau for any of the real estate taxes related to Plaintiff's twenty-six properties.[6] (Doc. 1 ¶ 47.) Cadle has refused to return the funds to Plaintiff. (*Id.* ¶ 66.)

## E. Attempted Tax Sale and Sale of Properties

"After sending all of the appropriate notices to the Plaintiff," the Tax Claim Bureau, at the direction of Defendants Urban and Dysleski, exposed Plaintiff's twenty-six properties to an "Upset Tax Sale" on December 5, 2008. (Doc. 1 ¶¶ 69, 76.) Plaintiff received the notices on or about September 1, 2008. (Doc. 32 at 11.)

On October 7, 2008, Plaintiff petitioned the Luzerne County Court of Common

---

**4.** Plaintiff lists the date as October 2007 (Doc. 1 ¶ 40), but Cadle Defendants assert they filed the action in September 2006 (Doc. 26 at 4). Plaintiff did not refute this correction in his opposition brief (Doc. 38) so we will assume Cadle Defendants' date to be correct.

**5.** Cadle Defendants contend this allegation is false and they did not continue to collect rents

or interfere with his management of the properties while the appeal was pending. (Doc. 26 at 5 n. 4.) They also assert that, as private citizens, there was no government action involved in collecting rents for the subject properties. (*Id.*)

**6.** *See supra* n. 4 concerning the factual dispute on the matter of unpaid funds.

Please to stay the Upset Tax Sale. (*See* Doc. 33–2 at 2–5 (Petition for Stay Order in the matter of *Joseph R. Reisinger v. Luzerne County Tax Claim Bureau*, Civil Action No. 13316 of 2008).) Plaintiff requested the stay "based on equitable principles, because all of the taxes related to the Properties the subject of the upcoming tax sales will be paid in full, as a product of the litigation of the above cases." (Doc. 33–2 at 4.) The cases to which Plaintiff refers are the following: 1) a petition for a preliminary injunction in the case of *Joseph R. Reisinger v. Ronald V. Santora and Bresset & Santora, L.L.C.*, Civil Action No. 14431–07 (filed on August 13, 2008) in which Plaintiff requested a damage award of $450,000.00 be allocated to the purchase of the subject real estate tax claims;[7] 2) a petition for a preliminary injunction in the case of *Joseph R. Reisinger v. Nova Savings Bank and The Cadle Company II, Inc.*, Civil Action No. 13317–08 (filed on October 7, 2008) "dealing with tax payments that were paid in escrow, or are being held in trust, totaling $281,914.45" in which Plaintiff requested that amount be allocated to the purchase of the subject real estate tax claims; and 3) the case of *Joseph R. Reisinger v. Nova Savings Bank and The Cadle Company II, Inc.*, Civil Action No. 5264–2007, in which Plaintiff requested a recovery of $1,940,251.54 as overpayments of debt service in reference to notes and mortgages related to the subject properties.[8] (Doc. 33–2 at 3.)

Plaintiff had asked the Tax Claim Bureau to participate in the injunctions, and the Tax Claim Bureau declined. (Doc. 1 ¶¶ 77–119.) In addition to communication with Defendant O'Donnell, Plaintiff sent a copy of the Nova/Cadle Injunction petition to Defendant Blaum, County Solicitor, and Defendant Urban, a Luzerne County Commissioner, to determine if Luzerne County had an interest in participating in the above lawsuit. (*Id.* ¶¶ 105–106.) Neither Blaum nor Urban responded. (*Id.* ¶ 106.)

The Tax Claim Bureau officially objected to the stay petition at the hearing held on Plaintiff's stay petition and the two preliminary injunction petitions. (*Id.* ¶ 121.) The injunction and stay petitions were denied, the latter by Order of October 30, 2008. (*Id.* ¶ 122; Doc. 6 ¶¶ 15–16.) Plaintiff did not appeal on any of the denials "because he was impoverished, and therefore could not afford to post a substantial bond, that would have been ordered." (*Id.* ¶ 123.)

There were no bidders at the December 5, 2008, sale. (Doc. 1 ¶¶ 69, 125.) After December 5, 2008, the Tax Claim Bureau acted as the owner of the twenty-six properties. (*Id.* ¶ 71.)

Cadle Defendants Kermec, Harrah, and Randazzo, have managed the twenty-six properties on behalf of the Tax Claims Bureau. (Doc. 1 ¶ 72.) They also arranged for purchasers of the property at the Free and Clear Sale by the Tax Claim Bureau. (Doc. 1 ¶ 73.)

On June 26, 2009, the Tax Claim Bureau petitioned the Luzerne County Court of Common Pleas to authorize a judicial tax

---

**7.** The underlying action is a legal malpractice claim against Plaintiff's former attorney and his firm (*see* Doc. 1 ¶¶ 77–98). Neither are parties in this action.

**8.** In addition to the actions outlined here, the parties' filings indicate there have been numerous cases filed in the Luzerne County Court of Common Pleas related to the subject properties which are not directly relevant to the matters under consideration here. (*See, e.g.*, Doc. 1 ¶¶ 48, 51–53, 61; Doc. 26 at 3 n. 3, 4; Doc. 29 at 7–10.)

Before filing this action, Plaintiff filed another 42 U.S.C. § 1983 case in this Court (3:09–CV–210) against Defendants Cadle, Daniel Cadle and others.

sale of the properties which sale was scheduled for August 26, 2009. (Doc. 32 at 12 (*citing* Doc. 6 ¶ 17).) A hearing regarding the Tax Claim Bureau's judicial sale petitions was scheduled for July 27, 2009, and the hearing was held on that date. (Doc. 26 at 8; Doc. 32 at 13.)

By Order of August 6, 2009, the Luzerne County Court of Common Pleas granted the Petition of the Tax Claim Bureau to sell thirty-one properties owned by Plaintiff in connection with which the outstanding real estate taxes exceeded $950,000.00. (Doc. 26 at 8.) This sale would be "free and clear of all the claims, encumbrances and liens etc that were reflected in the title search attached to the Petitions." (Doc. 6 ¶ 18))

Plaintiff filed the instant Complaint on August 13, 2009. (Doc. 1.)

On August 21, 2009, Plaintiff filed a Petition for Reconsideration of the August 6, 2009, state court order authorizing the Judicial Sale. (Doc. 26 at 8.) A hearing was held on this matter on August 24, 2009, and the Luzerne County Court of Common Pleas denied and dismissed the Petition by Order of August 25, 2009. (*Id.*)

Plaintiff did not file an appeal of the Luzerne County Court's August 6, 2009, or August 25, 2009, decisions. (Doc. 26 at 8.) The time for doing so has passed. (*Id.*)

The twenty-six subject properties were sold at the Free and Clear Sale held on August 26, 2009. (Doc. 33–7 at 8.)

On October 15, 2009, Plaintiff filed a Petition to Object to Free and Clear Sale in the Luzerne County Court of Common Pleas. (Doc. 33–7 at 4–7.) This filing is pursuant to the Pennsylvania Real Estate Tax Law. (Doc. 32 at 6.) The basis of the petition is Plaintiff's claimed violations of constitutional and state rights set out in the instant complaint. (Doc. 33–7 at 6–7.) Plaintiff requests the Luzerne County Court of Common Pleas to invalidate the Free and Clear sale of his properties and order the Tax Claim Bureau not to list the properties again until this federal litigation is completed because the "Free and Clear Sales of the Petitioner's Properties totally frustrated the Prayer for Relief requested in the Petitioner's 1983 Complaint" and also because of the violations set out in the complaint. (*Id.* at 7.)

### F. Non-factual Allegations

As noted above, *see supra* n. 2, Plaintiff's Complaint contains numerous allegations and legal conclusions not properly considered as factual background in the case. However, because Plaintiff's opposition brief (Doc. 38) provides minimal argument on the issues presented, we provide in the margin a summary of at least some of these assertions to provide some context for the assertions made in Plaintiff's brief.[9]

---

9. Regarding the escrow agreement with Nova, Plaintiff claims "the Tax Claims Bureau was a third party beneficiary of the agreement, also with rights to enforce the performance of its terms." (Doc. 1 ¶ 29.)

Cadle's alleged failure to remit the proper funds to the Tax Claim Bureau was "in flagrant violation of its fiduciary duties due to the Plaintiff, and in direct violation of the Plaintiff's rights and Tax Claims Bureau's rights in the loan agreement, and various state regulations." (Doc. 1 ¶ 39.)

Regarding Cadle as mortgagee-in-possession (and the Cadle Preliminary Injunction

matter), Cadle Defendants and governmental officials violated Plaintiff's "constitutional and state rights by Cadle (i) intentionally disregarding the writ of supersedeas, by interfering with the Plaintiff's resumption of the management of his properties, and (ii) otherwise illegally compromising the Plaintiff's ability to represent himself in the above appeal, and therefore prejudiced the Plaintiff's rights in the above appeal, all of which is the subject of another U.S.C. § 1983 case filed in the District (3:cv–09–210)." (Plaintiff does not note that the Court of Common Pleas Order allowing Cadle to collect rents for the subject prop-

## II. Procedural Background

Plaintiff filed the nine count Complaint that is the subject of the pending motions to dismiss on August 13, 2009. (Doc. 1.) Plaintiff does not reference in his Complaint the events related to the sale of the property which occurred from June 26, 2009 (date Tax Claim Bureau filed petitions for "free and clear" sale of properties scheduled for August 26, 2009), through August 6, 2009 (date of the Order which authorized sales following hearing on Tax Claim Bureaus's petitions). Based on activities that preceded these events, Plaintiff asserts 42 U.S.C. § 1983 claims against all Defendants alleging Procedural Due Process (Count I) and Equal Protection (Count II) violations. The remaining counts are pendant state law claims: Invasion of Privacy (Count III); Interference with Contractual Relationship (Count IV); Breach of Contract (Count); Conversion (Count VI); Fraud and Misrepresentation (Count VII); Conspiracy (Count VIII);

erties was affirmed by Order of the Superior Court entered August 23, 2007. (*See* Doc. 26 at 5.))

Cadle, as mortgagee-in-possession was the quasi or constructive trustee of the properties. (Doc. 1 ¶ 45.)

Plaintiff asserts he was not kept apprised of the status of Cadle's lawsuit against the Tax Claim Bureau alleging improprieties in the amount of taxes due on Plaintiff's properties (a suit in which Plaintiff contends he was joined as an interested party). (Doc. 1 ¶ 48.) Plaintiff points to this as evidence of a conspiracy among all Defendants to cause the sale of Plaintiff's properties, to allow Nova and Cadle to retain the escrowed funds, and to allow Cadle to retain the trustee funds. (*Id.* ¶¶ 54–56.) Plaintiff further claims that in the process of implementing the conspiracy, Defendants agreed to ignore their respective obligations and Plaintiff's constitutional and state rights. (*Id.* § 57.)

Cadle's foreclosure complaints against the subject properties could not be decided and Cadle would not be able to liquidate its mortgage interests based on the numerous "offsets" Plaintiff claims, including monies due from Luzerne County cases against Nova and Cadle and his § 1983 case filed in federal court (3:cv 09–210). (Doc. 1 ¶¶ 60–64.) Cadle Defendants, by participating in the alleged conspiracy with the Tax Claim Bureau are attempting to cause the liquidation of Plaintiff's ownership interest in the properties without first litigating all of the offset matters noted. (*Id.* ¶ 65.)

Plaintiff maintains that the December 5, 2008, tax sales were void based on the conspiracy, and despite this fact, the Tax Claim Bureau has been acting as owner since that time. (Doc. 1 ¶¶ 69–71.)

The Tax Claim Bureau's refusal to participate in Plaintiff's injunctions in which he sought to obtain funds (to satisfy tax arrearages) from suits against his attorney (Santora) and Nova/Cadle would have benefitted the Tax Claim Bureau and, therefore, the refusal is evidence of conspiracy. (Doc. 1 ¶¶ 77–120.) Further, regarding the Nova/Cadle injunction, the Tax Claim Bureau had an obligation to assist Plaintiff to obtain the funds from Cadle, the mortgagee-in-possession, its participation in the injunction against Nova/Cadle would have been consistent with its statutory purpose, and it had a statutory obligation to honor the escrow agreement and an equitable obligation to seek enforcement of its terms. (*Id.* ¶¶ 112–113, 115.)

The Tax Claim Bureau did not comply with its responsibility to conduct tax sales of only properties with delinquent taxes as defined by the Real Estate Act based on Plaintiff's assertion that the properties at issue did not have delinquent taxes. (Doc. 1 ¶ 137.) Plaintiff posits that the taxes were not delinquent because of "(i) the escrow payments to Nova and Cadle; (ii) the tax funds that Cadle is holding as a trustee for the Plaintiff, and (iii) the funds that were related to the Santora Injunction and the Nova/Cadle Injunction." (*Id.* ¶ 138.) Plaintiff concludes that because the taxes were not delinquent, the sales by the Tax Claim Bureau were illegal and in violation of the Real Estate Tax Act, the Tax Claim Bureau does not hold proper legal title to the properties, and the seizure of Plaintiff's properties at the Upset Tax Sale on December 5, 2008, violated Plaintiff's constitutional and state rights and was contrary to the statutory obligations of the Tax Claim Bureau. (*Id.* ¶¶ 139–141.)

and Intentional Infliction of Emotional Distress (Count IX). (Doc. 1 at 39–52.) Plaintiff seeks monetary compensation and restoration of the ownership of his former properties. (*See, e.g.,* Doc. 1 at 40.)

On August 25, 2009, Plaintiff filed Plaintiff's Motion for a Temporary Restraining Order (Doc. 6) requesting this Court to restrain the Luzerne County Tax Claim Bureau from selling his properties at the Free and Clear Sale scheduled for August 26, 2009. (*Id.* at 14.) The Court had a telephone conference regarding the motion on August 26, 2009. (Doc. 11.) The Court deemed the motion withdrawn by Order of August 28, 2009. (Doc. 14.)

As set out above, with the three pending motions to dismiss, all Defendants who have been served seek dismissal.[10] These motions are now ripe for disposition.

### III. Discussion

## A. MOTION TO DISMISS STANDARD

### 1. Rule 12(b)(1) Standard

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991)). This is a much more demanding standard than that applied to Rule 12(b)(6). *Id.* "Furthermore, the district court may not presume the truthfulness of plaintiff's allegations but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" *Id.* (*quoting Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

### 2. Rule 12(b)(6) Standard

A party may move to dismiss a claim or claims set forth in a plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). The defendant bears the burden of showing that no claim has been presented. *See, e.g., Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

*McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district

---

**10.** As noted previously, the record does not indicate that Defendant Craig J. Scher, identified in the Complaint as an "agent, servant and/or employee of Nova" (Doc. 1 ¶ 18) acknowledged service or responded to the Complaint in any way.

courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips* [*v. Co. of Allegheny* ], 515 F.3d [224,] 234–35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler*, 578 F.3d at 210–11.

■ The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guir-*

*guis v. Movers Specialty Services, Inc.,* 346 Fed.Appx. 774, 776 (3d Cir.2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (not precedential).

■■ Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir.1999). Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (*Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint."[11] (*Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

---

**11.** The Circuit Court noted the following reference in the margin: "For an analysis of materials courts consider on 12(b)(6) motions, see Kurtis A. Kemper, Annotation, *What Matters Not Contained in the Pleadings May Be Considered in Ruling on a Motion to Dismiss* *under Rule 12(b)(6) of the Federal Rules of Civil Procedure or Motion for Judgment on the Pleadings under Rule 12(c) Without Conversion to Motion for Summary Judgment*, 138 A.L.R. Fed. 393, 1997 WL 475158." *In re Rockefeller*, 184 F.3d at 287 n. 10.

## B. CADLE DEFENDANTS' MOTION TO DISMISS

Cadle Defendants filed their motion to dismiss (Doc. 25) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) on October 12, 2009, and it became ripe for disposition with the filing of their reply brief (Doc. 40) on December 18, 2009. In their supporting brief (Doc. 26), Cadle Defendants assert the following bases for the requested dismissal of Plaintiff's federal claims: 1) lack of subject matter jurisdiction based on the *Rooker–Feldman* doctrine; 2) failure to state causes of action on which relief can be granted for both Plaintiff's Procedural Due Process and Equal Protection claims; and 3) operation of the doctrine of res judicata. (Doc. 26 at 1–2.) Cadle Defendants also request dismissal without prejudice of Plaintiff's state law claims due to lack of subject matter jurisdiction. (*Id.* at 2.) For the reasons discussed below, we concur that Plaintiff's claims against the Cadle Defendants should be dismissed. We will address each of these arguments in turn.

### 1. *Rooker–Feldman Doctrine*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Cadle Defendants argue that this Court does not have subject matter jurisdiction over Plaintiff's federal claims based on the *Rooker–Feldman* Doctrine. (Doc. 26 at 11.) For the reasons discussed below, we agree.

■ The *Rooker–Feldman* doctrine derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). "The *Rooker–Feldman* doctrine precludes lower federal courts 'from exercising appellate jurisdiction over final state-court judgments' because such appellate jurisdiction rests solely with the United States Supreme Court." *In re Madera,* 586 F.3d 228 (3d Cir.2009) (*quoting Lance v. Dennis,* 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006)). The United States Supreme Court narrowed the applicability of the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). "The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284, 125 S.Ct. 1517; *see also Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir.2006) (*quoting Exxon Mobil,* 544 U.S. at 284, 125 S.Ct. 1517). The Court further explained the workings of the doctrine and when it is *not* implicated.

When there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of state-court litigation. But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court. 544 U.S. at 292, 125 S.Ct. 1517 (internal quotations and citations omitted).[12] In

12. The Court provided the following citations regarding comity and abstention doctrines: *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47

*Exxon Mobil,* the Court determined that *Rooker–Feldman* was not implicated where ExxonMobil filed a suit in the United States District Court for the District of New Jersey about two weeks after Saudi Arabia Industries Corp. ("SABIC") sued ExxonMobil in Delaware Superior Court. 544 U.S. at 289, 125 S.Ct. 1517. The SABIC action was for declaratory judgment that the royalty charges under the joint venture agreement between SABIC and ExxonMobil were proper. *Id.* The Exxon-Mobil federal action alleged that SABIC overcharged the joint ventures for the sublicenses.[13] *Id.* The Court concluded that because ExxonMobil filed suit well before any judgment in state court "to protect itself in the event it lost in state court . . . on grounds that might not preclude relief in the federal venue[,] . . . *Rooker–Feldman* did not prevent the District Court from exercising jurisdiction . . . and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware Courts." 544 U.S. at 293–94, 125 S.Ct. 1517.

The Third Circuit Court of Appeals has explained that the *Rooker–Feldman* doctrine is implicated when " 'in order to grant the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual.' " *In re Madera,* 586 F.3d at 231 *(quoting FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996)).[14] A claim is

barred under two circumstances. The first is when the federal claim was actually litigated in state court before the federal action was filed. *Id. (citing In re Knapper,* 407 F.3d 573, 580 (3d Cir.2005)). The second circumstance is when " 'the federal claim is inextricably intertwined with the state adjudication, meaning federal relief can only be predicated upon a conviction that the state court was wrong.' " *Id. (quoting In re Knapper,* 407 F.3d at 580). *In re Madera* identifies two situations when a federal claim is "inextricably intertwined" with an issue adjudicated in state court: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *Id.*

To properly apply *Rooker–Feldman,* the court must determine exactly what the state court decided. *See Koynok v. Lloyd,* 328 Fed.Appx. 133, 137 (3d Cir.2009) (not precedential) *(citing Marran v. Marran,* 376 F.3d 143, 150 (3d Cir.2004); *Desi's Pizza v. Wilkes–Barre,* 321 F.3d 411, 421 (3d Cir.2003); *Gulla v. N. Strabane Twp.,* 146 F.3d 168, 171 (3d Cir.1998)).

Cadle Defendants argue that here Plaintiff is alleging that the Tax Claim Bureau acted improperly in allowing his properties to be sold at tax sale and "the assertions of these claims represents nothing more than an attempt to get this Court to overturn the state court Orders finding that the proper procedures had been followed by

---

L.Ed.2d 483 (1976); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**13.** Federal jurisdiction was predicated on 28 U.S.C. § 1330 which authorizes district courts to adjudicate actions against foreign states. 544 U.S. at 289, 125 S.Ct. 1517.

**14.** In *Gary v. Braddock Cemetery,* 517 F.3d 195, 200 n. 5 (3d Cir.2008) the Third Circuit Court of Appeals advised that "caution is now appropriate in relying on our pre-*Exxon* formulation of the *Rooker–Feldman* doctrine." Here we rely on post *Exxon Mobil* Third Circuit authority.

the Luzerne County Tax Claim Bureau in allowing the sale to go forward on August 26, 2009." (Doc. 26 at 13.)

Plaintiff asserts that his claims are not barred by *Rooker–Feldman* because he does not complain of injuries caused by the State Court judgments "rather his injuries rest upon alleged violations of his Constitutional Rights which occurred prior to his State Court proceeding." (Doc. 38 at 10 (*citing Turner*, 449 F.3d at 547).) He maintains his claims are not "inextricably intertwined" with the prior state court adjudication in that this Court's adjudication of the matters presented does not require a finding that the state court was wrong or that the state court made an incorrect factual or legal determination. (Doc. 38 at 10.) He further asserts that the matters raised in his federal claims were never adjudicated as part of state court proceedings. (*Id.*) Finally, *Plaintiff claims* that *Rooker–Feldman* does not apply to parallel federal and state litigation and the doctrine has no application to determinations made by a state administrative agency, here the Luzerne County Tax Claim Bureau. (*Id.* at 11.)

▮ We will look first to what the state court decided in this case. *See, e.g., Koynok*, 328 Fed.Appx. at 137. Although Plaintiff's Complaint does not reference significant events related to the subject properties which occurred prior to the filing of the Complaint (*see* Doc. 1), because subject-matter jurisdiction may be considered by the court *sua sponte, see, e.g. Schneller ex rel. Schneller v. Fox Subacute*

*at Clara Burke,* 317 Fed.Appx. 135, 138 (3d Cir.2008) (listing cases), we will review all relevant events in consideration of the issues presented.

Here we know from the facts presented that the State Court (Luzerne County Court of Common Pleas) decided the following matters [15]: 1) Cadle's role as mortgagee-in-possession of Plaintiff's properties was proper (Doc. 26 at 5); 2) Plaintiff's claim that the tax sale of his properties scheduled for December 2008 should be stayed because (anticipated) proceeds from pending litigation would allow him to pay his tax arrearages was rejected by the state court and his stay petition was denied (*see, e.g.,* Doc. 1 ¶¶ 121–123; Doc. 33–2) [16]; and 3) the Tax Claim Bureau's planned sale of Plaintiff's properties at the August 26, 2009, "Free and Clear" sale was approved by the Luzerne County Court of Common Pleas Order of August 6, 2009 (Doc. 26 at 8).

In this action, Plaintiff raises two federal claims: a 42 U.S.C. § 1983 Procedural Due Process claim (Count I) and a 42 U.S.C. § 1983 Equal Protection Claim (Count II). The alleged wrongdoing upon which both claims are based is that "Defendants individually, jointly and severally with encouragement and participation of non-governmental employees forcibly entered and seized the property of the Plaintiff." (Doc. 1 ¶¶ 142, 145.) Plaintiff adds that the entry and seizure was "in violation of the First, Fourth, Sixth and Fourteenth Amendments." (*Id.*) The only distinction

---

15. The status/outcome of much of the litigation mentioned in Plaintiff's Complaint is uncertain.

16. With his Petition for Stay Order filed on October 7, 2008, Plaintiff filed numerous exhibits, including his complaints and requests for injunctive relief in the Nova/Cadle case and the Santora case. (*See* Doc. 33–2.) Through these exhibits, the Luzerne County

Court of Common Pleas was apprised of many of the alleged wrongdoings set out in Plaintiff's Complaint here. (*Id.*) The exhibits also show that the Luzerne County Tax Claim Bureau was named as an interested party in the Nova/Cadle suit (*see, e.g.,* Doc. 33–2 at 41) and that Plaintiff alleged the Tax Claim Bureau was a third party beneficiary of the second loan modification agreement with Nova (*id.* at 44).

between Counts I and II is that Plaintiff asserts in Count I that he "was not afforded the opportunity to procedural due process" (Doc. 1 ¶ 143) and in Count II that he "was not afforded the opportunity of equal protection under the Fourteenth Amendment" (Doc. 1 ¶ 146). In the "wherefore" clause of each count Plaintiff seeks the following relief:

> Wherefore, judgment is demanded against the Defendants individually, jointly and severally, (i) for compensatory and punitive damages in an amount in excess of Eighty–Thousand Dollars ($80,000), together with the interest, costs and attorney's fees, and (ii) for the restoration of record to the Plaintiff, by the Tax Claim Bureau, of the ownership of his former properties, after the date of the above financial recovery by the Plaintiff, in the amount of the Plaintiff's financial recovery provided for herein, as applied by the Plaintiff to the purchase of record of his former properties from the Tax Claim Bureau, at the Free and Clear Sale next scheduled after the date of the above recovery.

(Doc. 1 at 40, 41–42.)

This review of Plaintiff's federal claims indicates that the only injury upon which these claims are based is the alleged entry onto and seizure of his properties.[17] With this background, we will proceed with the *Rooker–Feldman* analysis required by *Exxon Mobil.*

■ The Supreme Court essentially set out four requirements that must be met for a district court to decline jurisdiction pursuant to *Rooker–Feldman.* The doctrine applies only to "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon Mobil,* 544 U.S. at 284, 125 S.Ct. 1517.

■ We conclude the first *Exxon Mobil* requirement is satisfied in that it appears from the record before us that Plaintiff has been a "state-court loser," 544 U.S. at 284, 125 S.Ct. 1517, in Luzerne County Court of Common Pleas litigation and thus satisfies the first *Exxon Mobil* requirement. The record is clear that Plaintiff lost in his attempt to prohibit the Luzerne County Tax Claim Bureau from selling his properties at an Upset Tax Sale scheduled for December 2008. In the Luzerne County Court of Common Pleas matter of *Joseph R. Reisinger v. Luzerne County Tax Claim Bureau,* Civil Action No. 13316 of 2008, the Court of Common Pleas denied Plaintiff's request for a stay of the December 2008 sale of his properties by Order of October 30, 2008. (Doc. 33–2 at 2.) Plaintiff was also a "state-court loser" when the Luzerne County Court of Common Pleas, by Order of August 6, 2009, again allowed his properties to be sold at the "Free and Clear" sale scheduled for August 26, 2009. (*See* Doc. 26 at 8.)

We conclude the second *Exxon Mobil* consideration is satisfied because with this federal action Plaintiff complains "of injuries caused by state-court judgments." 544 U.S. at 284, 125 S.Ct. 1517. This requirement can be seen as a question whether " 'absent the state court's judgment,' " the plaintiff " 'would not have the injury he now seeks to redress.' " *Turner,*

---

17. As noted previously, Plaintiff presents many allegations and legal conclusions in the "Basic Context" section of his Complaint. *See supra* p. 341 n. 2, p. 337 n. 9. Although his federal claims incorporate all preceding paragraphs, based on the manner presented we will not assess all of Plaintiff's preceding allegations in the context of his federal claims. Notably, Plaintiff does not repeat any of these arguments or cite to specific facts in the *Rooker–Feldman* section of his opposition brief. (*See* Doc. 38 at 2–4.)

449 F.3d 542 (*quoting Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir.2005)); *see also South Washington Ave., L.L.C. v. Wilentz, Goldman & Spitzer, P.A.*, 259 Fed.Appx. 495 (3d Cir.2007) (not precedential) (*quoting Holt*, 408 F.3d at 336 ("*Rooker–Feldman* barred plaintiff's action because 'absent the state court's judgment . . . [plaintiff] would not have the injury he now seeks to redress' ")). In *Holt*, a case which acknowledged the *Exxon Mobil* considerations we review here, the plaintiff lost possession of his property after the county sold it to recover unpaid taxes. 408 F.3d at 335. He had challenged the sale in state court proceedings and then filed suit in federal court asserting a § 1983 claim that he was deprived of his property without due process, requesting the court to preclude the defendants from depriving him of his property without due process. *Id.* The district court dismissed the case pursuant to the *Rooker–Feldman* doctrine and the circuit court affirmed with reasoning we find relevant here.

> [The plaintiff's] injury was caused by the state court judgments upholding the tax sale and evicting him from his property. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556 (7th Cir.1999) ("[I]t does not seem that Long's due process argument can be considered separate from the eviction order entered against her"); *Ritter v. Ross*, 992 F.2d 750, 755 (7th Cir.1993). In *Ritter*, we held that the *Rooker–Feldman* doctrine precluded the district court from hearing a claim that a county deprived plaintiffs of property without due process by selling the property at an auction to recover unpaid taxes. We noted that the plaintiffs would have no claim "but for the tax lien foreclosure judgment." *Id.* at 754. Likewise, absent the state court's judgment evicting him from his property, [the plaintiff] would not have the injury he now seeks to redress. *See Long*, 182

F.3d at 557; *Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir.1994). . . . We have repeatedly stated that "a litigant may not attempt to circumvent the effect of *Rooker–Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action." *Long*, 182 F.3d at 556; *see Ritter*, 992 F.2d at 754. Thus, [the plaintiff] cannot overcome the jurisdictional bar by styling his claim as a due process action.

*Holt*, 408 F.3d at 336.

As discussed above, the allegations in Counts I and II appear to be premised only on assertions that Defendants forcibly entered and seized Plaintiff's properties-no more specifics are provided. (Doc. 1 ¶¶ 142, 145.) In the "Basic Context" portion of his brief, Plaintiff appears to point to the Upset Tax Sale held on December 5, 2008, as the point at which the seizure of his properties took place. (*Id.* ¶¶ 140–141.)

There is no doubt that the state court actions reviewed above allowed the entry onto and seizure of Plaintiff's properties and, therefore, caused Plaintiff's injuries. Plaintiff maintains otherwise but does not come close to meeting his burden on this subject-matter jurisdiction issue in that his assertions are primarily a recitation of legal principles devoid of the appropriate analysis. (*See* Doc. 38 at 9–11.) Moreover, whatever arguments Plaintiff were to make, he cannot get around the fact that but for the state court decisions affirming the propriety of the Tax Claim Bureau's sale of his property, he would have no injury upon which to base his federal claim. *See Untracht v. Weimann*, 141 Fed.Appx. 46, 49 (3d Cir.2005) (not precedential) ("For all [the plaintiff] claims that he is not using the present action as a vehicle to appeal state court orders entered [over an eleven year period], such an appeal is at the heart of his action.").

■ Similarly, Plaintiff's assertion that he did not raise these claims in state court (Doc. 38 at 10) is unavailing in that a plaintiff "cannot invoke federal jurisdiction merely by couching his claims in terms of a civil rights action." *Buchanan v. Gay,* 491 F.Supp.2d 483, 493 (D.Del.2007); *see also Dubose v. Walsh,* Civ. A. No. 07–045, 2008 WL 4426090, at *5 (D.Del. Sept. 29, 2008). In *Dubose* the plaintiff sought money damages and other relief (including injunctive relief and/or to quiet title) pursuant to § 1983 based on alleged First, Fourth, and Fourteenth Amendment claims stemming from a state court mortgage foreclosure action. 2008 WL 4426090, at *1–2. The district court concluded that to grant relief, effectively it would have to conclude that the Delaware state court had made the wrong decision regarding the plaintiff's property and it could not do so pursuant to the *Rooker–Feldman* doctrine. *Id.* at *5 (listing cases). Likewise, no matter how Plaintiff fashions his claims, here we would effectively have to conclude that the state court had made the wrong decision regarding the sale of Plaintiff's properties. *See Holt,* 408 F.3d at 336 (styling claim as a due process action did not overcome jurisdictional bar); *accord In re Knapper,* 407 F.3d at 580–81; *see also Ash v. Redevelopment Authority of Philadelphia,* 143 Fed. Appx. 439, 442 (3d Cir.2005) (not precedential) (styling challenge to Court of Common Pleas order allowing sheriff's sale of property as equal protection claim did not prevent application of *Rooker–Feldman* doctrine). Throughout Plaintiff's Complaint, he alleges that the listing of his properties for upset or free and clear sale was wrong. (*See* Doc. 1.) Further, in Plaintiff's Petition for Reconsideration of the Luzerne County Court's August 6, 2009, Order authorizing the Tax Claims Bureau's sale of his properties (which was filed after this federal case on August 21, 2009), Plaintiff states that he "asserted various continuing ownership interests in his properties" in the federal complaint under consideration here. (*See* Doc. 33–5 at 3–10.)

Although Plaintiff cites *Turner* in support of his statement that "his injuries rest upon alleged violations of his Constitutional Rights which occurred prior to his State Court proceeding" (Doc. 38 at 10 (*citing Turner,* 449 F.3d at 547)), this case is easily distinguishable. Unlike in *Turner* where the plaintiff raised Fair Housing Act and disability discrimination claims for the first time in the federal action, 499 F.3d at 545–46, Plaintiff does not identify the same type of specific federal claims which were not raised in the state court proceedings. In *Turner,* the court concluded that the claims grounded on the Fair Housing Act were "not caused by the state-court judgment but instead attributable to defendants' alleged FHA violations that preceded the state court judgment." 449 F.3d at 547. There are no analogous facts here.[18]

Keeping in mind it is Plaintiff's burden to show subject matter jurisdiction pursuant to Rule 12(b)(1), we conclude that the generic claimed violations of constitutional rights made here do not bring this case within the *Turner* framework. Rather, Plaintiff's injuries were caused by state court judgments which denied Plaintiff the

---

**18.** If those "injuries" to which Plaintiff refers have to do with the funds allegedly withheld by Nova and Cadle, the Tax Claim Bureau's lack of participation in Plaintiff's injunctions in his state court cases against Santora and Nova/Cadle, the Tax Claim Bureau's decision to petition for sale of the subject properties, and/or the state court decision to allow Cadle to act as "mortgagee-in-possession," the state court was aware of these matters when deciding the propriety of the petitions for sale of the properties due to unpaid taxes (*see, e.g.,* Doc. 33–2) and nonetheless approved the proposed sales.

relief sought, and the second *Exxon Mobil* requirement is satisfied.

The third *Exxon Mobil* consideration is also satisfied in that the state court decisions which caused Plaintiff's injury were "rendered before the district court proceedings commenced," 544 U.S. at 284, 125 S.Ct. 1517. While this aspect of the analysis could be seen as somewhat challenging given the timeline of federal and state filings here, we conclude it is not so with a strict application of the *Exxon Mobil* requirement. Plaintiff filed this action on August 13, 2009, *after* the Luzerne County Court of Common Pleas entered its Order on August 6, 2009, granting the Petition of the Luzerne County Tax Claims Bureau to list the properties at the August 26, 2009, tax sale. (*See* Doc. 26 at 8.) (A hearing had been held on the matter and Plaintiff, who had received notice, did not attend. (*Id.*)) Importantly, no appeal or petition for reconsideration of the August 6, 2009, Order was pending when Plaintiff filed this federal action (and no appeal of the order was ever filed). (*See* Doc. 26 at 8.) Therefore, at the time the action was filed, the matter in state court had ended. Plaintiff's Petition for Reconsideration, filed on August 21, 2009, and Plaintiff's petition objecting to the free and clear sale filed on October 15, 2009, were filed *after* he filed the federal complaint, and, therefore, do not change the fact that *at the time of filing*, the state court matter had ended.

Though the law is not perfectly clear on which state court orders are sufficiently final to implicate *Rooker–Feldman*, i.e., when state proceedings have "ended," and we can find no Third Circuit case on point,

it is certain that recent decisions in which the Third Circuit found *Rooker–Feldman* inapplicable are distinguishable from this case. In *Taliaferro v. Darby Twp. Zoning Board*, 458 F.3d 181, 193 (3d Cir.2006), the court found that where the federal action was commenced after the zoning board decision but well before any state court judgment was reached, the district court could not have been invited to review and reject such a judgment and, therefore, *Rooker–Feldman* did not bar the federal action. *Accord Dreibelbis v. Young*, 351 Fed.Appx. 711, 713–14 (3d Cir.2009) (not precedential) (*Rooker–Feldman* did not bar subject-matter jurisdiction where state court judge's decision entered over nine months after plaintiff filed federal claim); *Koynok*, 328 Fed.Appx. at 136–37 (no *Rooker–Feldman* bar where no decision had been entered in Court of Common Pleas when federal action filed).

Here the Luzerne County Court of Common Pleas had entered its decision on the sale of Plaintiff's properties and nothing was pending in state court when Plaintiff filed the instant action. There is no indication that this was not an appealable order at the time this case was filed, a consideration seen significant by some courts in the determination of the finality of the state court proceedings. *See, e.g., Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24–27 (1st Cir.2005); *see also Sinclair v. Bankers Trust Co. of Cal.*, No. 5:95–CV–072, 2005 WL 3434827, at *2–4 (W.D.Mich. Dec. 13, 2005).[19]

---

**19.** Other courts have concluded that state proceedings have not ended for *Rooker–Feldman* purposes when an appeal from the state court judgment is pending at the time the plaintiff commences the federal action. *See, e.g., Green v. Jefferson County Commission*, 563 F.3d 1243, 1249–50 (11 Cir.2009) (listing cases); *see also Allen v. Pa. Soc. for the Pre-*

*vention of Cruelty to Animals*, 488 F.Supp.2d 450, 457–58, 461 (M.D.Pa.2007) (Conner, J.). As discussed in the text, that is not situation here—no appeal was pending when he filed this Complaint. While not pertinent to our determination, as noted in the text, no appeal was filed and the time for filing has passed. (*See, e.g.,* Doc. 26 at 8.)

Concerning the final *Exxon Mobil* question of whether the federal action "invit[es] district court review and rejection of [state court] judgments," 544 U.S. at 284, 125 S.Ct. 1517, we conclude that, despite Plaintiff's assertion to the contrary (Doc. 38 at 10), that is precisely what we must do in this case to grant Plaintiff the relief sought. Plaintiff asserts that he now raises federal claims that were not part of the state proceedings. (*Id.*) As discussed above, Plaintiff may not have made the same assertions in state court that he makes in the instant action, but as far as any federally cognizable claim is concerned, our discussion of the other *Exxon Mobil* requirements demonstrates that different assertions do not always make for a different claim and this is such a case. No matter how he paints the picture, Plaintiff clearly seeks review and rejection of the state court judgments.

Plaintiff notes that *Rooker–Feldman* does not apply to parallel federal and state litigation, a statement that is true in the context of "properly invoked concurrent jurisdiction." *Exxon Mobil*, 544 U.S. at 292, 125 S.Ct. 1517. However, where the *Exxon Mobil* factors are met, the action is not an acceptable parallel proceeding, but rather it is barred by the *Rooker–Feldman* doctrine. Here we have determined the factors are met and this federal action is not acceptable parallel litigation.

Plaintiff has not met his burden of showing that this Court has subject-matter jurisdiction over his federal claims. Specifically he has not shown that the *Rooker–Feldman* doctrine does not apply in this case. Therefore, based on the foregoing discussion, we conclude we do not have subject-matter jurisdiction over Plaintiff's federal claims.[20]

■ Pursuant to this determination, Plaintiff's Complaint will be dismissed for lack of subject-matter jurisdiction.[21] Further, leave to amend is not required because the extensive facts and court records submitted and reviewed indicate that leave to amend would be futile.[22] *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir.2002); *Mehta v. The City of Jersey City*, 360 Fed.Appx. 270, 270–71 (3d Cir.2010).

Despite our determination on the issue of subject-matter jurisdiction, in an abundance of caution, we will also review Cadle Defendants alternative grounds asserted in support of dismissal of Plaintiff's federal claims.

### 2. Procedural Due Process

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Cadle Defendants maintain

---

20. This conclusion is bolstered by cases which have applied the *Rooker–Feldman* doctrine where a plaintiff claims injury based on the improper seizure and sale of property—cases cited by Cadle Defendants which Plaintiff has not addressed. *See, e.g., Donaven v. York County Sheriff*, Civ. A. No. 1:08–CV–02218, 2009 WL 761195 (M.D.Pa. Mar. 19, 2009) (Conner, J.); *Chapman v. Delaware County Tax Claim Bureau*, Civ. A. No. 05–1312, 2007 WL 2207747 (E.D.Pa. July 24, 2007); *Carroll v. Welch*, Civ. A. No. 06–4502, 2007 WL 1377654 (E.D.Pa. May 9, 2007).

21. In *Judge v. Canada*, 208 Fed.Appx. 106, 108 (3d Cir.2006) (not precedential), the court noted that dismissal pursuant to the *Rooker–Feldman* doctrine should be without prejudice. However as discussed in the text in the following section, because Plaintiff also fails to state a claim in Counts I and II and because allowing leave to amend would be futile, dismissal of Plaintiff's federal claims with prejudice is appropriate in this case.

22. Dismissal on the basis of *Rooker–Feldman* is recognized as a situation where amendment of the Plaintiff's complaint would be futile. *See Watkins v. Proulx*, 235 Fed.Appx. 678, 679 (9th Cir.2007) (not precedential) (*citing Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991)); *see also Carroll*, 2007 WL 1377654, at *7.

Plaintiff does not state a claim for a procedural due process violation. (Doc. 26 at 15.) For the reasons discussed below, we agree.

■■■■ "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (citations omitted). To establish a claim under § 1983, the plaintiff must show that a person acting under color of state law violated a right secured by the United States Constitution and the laws of the United States.[23] *Id.* In order to prevail on a § 1983 claim against multiple defendants, the plaintiff must show that each defendant violated his constitutional rights. *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir.2005).

■■■■ The Due Process Clause of the Fourteenth Amendment prohibits the states from depriving any person of property without "due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir.2006) (*citing Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000)). In *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir.1989), the Third Circuit identified a plaintiff's need to allege and prove five things in relation to a § 1983 procedural due process claim:

(1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the Defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Id.* at 1113–14; *see also Zellner v. Monroe County Mun. Waste Management Authority*, No. 3:07–CV–1976, 2008 WL 2962595, at *5 (M.D.Pa. July 28, 2008) (Caputo, J.).

■■■■ "The level of process due to a party prior to the deprivation of a property interest, under the Due Process Clause, is highly dependent on the context." *In re Mansaray–Ruffin*, 530 F.3d 230, 238 (3d Cir.2008). The United States Supreme Court noted the "cryptic and abstract words" of the Due Process Clause in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Court held that prior to the deprivation of property, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. 652. The Court has held that mail service "is reasonably calculated to provide actual notice," *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), and commented that due process requires nothing more "and certainly not [in a case] where [the] petitioner had a statutory duty to pay his taxes," *Jones v.*

---

**23.** A municipality can only be held liable under a section 1983 theory "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v.*

*Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). These considerations would apply to Defendants Luzerne County and Luzerne County Tax Claim Bureau.

*Flowers,* 547 U.S. 220, 241–42, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

■■■ Cadle Defendants argue that Plaintiff's Complaint contains no allegations that he "did not have a full and ample opportunity to participate in state court proceedings concerning the scheduling and completion of the Luzerne County Upset Tax Sale and the subsequent Judicial Tax Sale, and/or that he was somehow deprived of participating in the challenges mounted in those proceedings." (Doc. 26 at 18.) Cadle Defendants add that

> the only supposedly wrongful state-actor conduct alleged . . . is that the . . . Tax Claim Buruea (i) should have but did not accept an assignment—in lieu of payment of actual monies owed for delinquent taxes—of a malpractice claim against Ronald Santora, Esquire, and (ii) wrongly refused to join in a frivolous lawsuit brought by Reisinger against The Cadle Company II, Inc. and Nova Savings Bank, in connection with which Reisinger alleged those two Defendants were somehow responsible for Reisinger not paying his real estate taxes, and these properties being sold at Tax Sale.

(Doc. 26 at 18–19.) Cadle Defendants conclude that the Tax Claim Bureau had no duty to do either of these things and neither triggers a § 1983 violation. (*Id.* at 19.)

Plaintiff maintains that he has met the five elements set out in *Sample.* (Doc. 38 at 13.) He also contends that discovery will enable him to prove his claims at trial. (*Id.* at 15.)

Although Cadle Defendants note in the margin of the background section of their supporting brief that "there was no government involvement or action whatsoever involved in whatever may have been done with collecting rent for [the subject] properties" (Doc. 26 at 5 n. 5), they do not raise a "color of state law" challenge to Plaintiff's § 1983 claims in the argument por-

tion of their brief (*id.* at 15–20). We will therefore proceed with the constitutional violation aspect of the analysis.

As to the first requirement that the plaintiff allege a deprivation of a protected property interest, *Sample,* 885 F.2d at 1113, Plaintiff has alleged the sale of his twenty-six (26) properties. Because "there is no real question that [a] [p]laintiff['s] ownership interest in real property merits the procedural protections of due process law," *United States v. James Daniel Good Real Property,* 510 U.S. 43, 49, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the first requirement is satisfied.

However, Plaintiff cannot satisfy the second *Sample* element in that he has not shown, and cannot show, that the deprivation was without due process, *id.* at 1113. Plaintiff's argument on this requirement is that the Tax Claim Bureau went forward with the tax sale "knowing that the funds were available which would have precluded a tax sale . . . thus causing the deprivation without due cause." (Doc. 38 at 14.) First we observe that Plaintiff's asserted certainty of the availability of adequate funds is not supported by the record. But more importantly, Plaintiff makes no allegation that the Tax Claim Bureau did not follow the required procedure. The record indicates that Plaintiff had notice of the Tax Claim Bureau's request to the Luzerne County Court of Common Pleas to list the properties for sale, had an opportunity to object to the sale, and had the further opportunity to request the Luzerne County Court of Common Pleas to reconsider its Orders allowing the sales. (*See, e.g.,* Doc. 1 ¶¶ 76, 122; Doc. 26 at 8; Doc. 32 at 12–13.) This more than satisfies the process due in the situation of a tax sale, *see, e.g., Jones,* 547 U.S. at 242, 126 S.Ct. 1708.

Based on the evidence of record, Plaintiff cannot meet this requirement and his procedural due process claim is properly

dismissed. Further, it is appropriate to dismiss this claim without allowing Plaintiff an opportunity to amend in that amendment here would be futile, *see Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir.2008)—Plaintiff himself admits receiving appropriate notice of the Tax Claim Bureau's Petitions regarding the sale of his properties for tax arrearages and that he also had the opportunity to present his objections to the sale. (Doc. 1 ¶¶ 76, 122.)

### 2. *Equal Protection*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Cadle Defendants maintain Plaintiff does not state a claim for an equal protection violation. (Doc. 26 at 20.) For the reasons discussed below, we agree.

Under the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state a § 1983 claim based on a violation of the Equal Protection Clause, a plaintiff must allege "the existence of purposeful discrimination ... in other words, that [he] received different treatment from that received by other individuals similarly situated." *See Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 151 (3d Cir.2005). There are different bases upon which a plaintiff can allege a violation, but he "must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." *Young v. New Sewickley Twp.*, 160 Fed.Appx. 263, 266 (3d Cir.2005) (not precedential) (*citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

When a plaintiff claims that his rights under the Equal Protection Clause have been violated not on the basis of his membership in a suspect class or his exercise of a fundamental right but simply on the basis of being treated differently from others similarly situated, he is asserting a claim under a "class of one" theory. *See Hill*, 455 F.3d at 239; *see also Phillips*, 515 F.3d at 243. Under this theory, "a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (*quoting Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). To state a claim under this theory, "at the very least ... a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239.

Here Plaintiff has not alleged any of the three required minimal allegations. (*See* Doc. 1.) In his opposition brief, Plaintiff contends that "he has demonstrated how he was selectively treated and has not only allege [sic], but has demonstrated that he was a subject of treatment by virtue of the conspiracy between the Defendants." (Doc. 38 at 16.) A review of Plaintiff's Complaint and opposition brief indicates this conclusory assertion is clearly not the case: Plaintiff does not even satisfy the threshold minimum of pointing to any "others similarly situated."

Insofar as Plaintiff infers that discovery is needed to permit a conclusion as to

whether he can prove this claim (*see* Doc. 38 at 15), given the content of Plaintiff's Complaint (Doc. 1) and opposition brief (Doc. 38), this amounts to a request to engage in a fishing expedition to find a cause of action—something this Court cannot allow. *See Ranke v. Sanofi–Synthelabo, Inc.,* 436 F.3d 197, 205 (3d Cir.2006); *see also Chemtech Intern., Inc. v. Chemical Injection Technologies, Inc.,* 170 Fed. Appx. 805, 808 (3d Cir.2006) (*quoting DM Research, Inc. v. Coll. of Am. Pathologists,* 170 F.3d 53, 55 (1st Cir.1999) ("the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings.... Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.")).

For the reasons discussed above, we conclude Plaintiff's Equal Protection claim does not come close to meeting *Twombly's* plausibility standard, and is therefore properly dismissed. It also appears that leave to amend this claim would be futile: the Cadle Defendants pointed to the basic deficiencies of Plaintiff's Equal Protection claim (Doc. 26 at 20) and Plaintiff had ample opportunity with his opposition brief to point to evidence which would satisfy the requirement and he did not do so.

### 3. Res Judicata

Cadle Defendants assert that Plaintiff's federal claims should also be dismissed on the basis of res judicata. For the reasons discussed below, we decline to make this determination.

"The principle of res judicata bars claims that were brought or could have been brought, in a previous action." *In re Mullarkey,* 536 F.3d 215, 225 (3d Cir. 2008). To determine the preclusive effects of a prior judgment, we would look to the law of the issuing court. *See Turner,* 449 F.3d at 548 (*citing Lance v. Dennis,* 546

U.S. 459, 466, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006)).

Because a Pennsylvania court was the issuing court in this case, we would apply Pennsylvania law. The Supreme Court of Pennsylvania explained that res judicata

bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same action.

*Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309, 313 (1995) (citation omitted). *Turner* quoted the above *Balent* language, emphasizing the application of the doctrine to claims "*which could have been litigated.*" 449 F.3d at 548. *Turner* also identified the following four conditions the two actions must share: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." *Id.* (*citing Bearoff v. Bearoff Bros., Inc.,* 458 Pa. 494, 327 A.2d 72, 74 (1974)). The "cause of action" requirement for res judicata purposes does not turn on the specific legal theory invoked, but generally turns on the essential similarity of the underlying events giving rise to the various legal claims. *Turner,* 449 F.3d at 549 (citation omitted). "[T]he identity of the acts complained of, the demand for recovery, the identity of witnesses, documents, and facts alleged" are pertinent considerations. *Id.* (internal quotation omitted).

Here Cadle Defendants have not specifically addressed the factors set out above. (See Docs. 26, 40.) Plaintiff states that the causes of action are different, as

are the parties to the actions.[24] (Doc. 38 at 11–12.) Neither argument is sufficient for the Court to make a determination on this matter and we decline to undertake the proper analysis *sua sponte*.

#### 4. State Law Claims

■ Cadle Defendants request that Plaintiff's remaining state law claims be dismissed without prejudice due to lack of subject-matter jurisdiction. (Doc. 26 at 2.) They do not provide argument on the issue and Plaintiff does not respond to their assertion. (*See* Doc. 38.) We decline jurisdiction of these claims based on our determination that dismissal of Plaintiff's federal claims is appropriate. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir.1997).

### C. COUNTY DEFENDANTS' MOTION TO DISMISS

County Defendants filed their motion to dismiss (Doc. 30) on October 16, 2009, and the motion became ripe with the filing of their reply brief (Doc. 41) on December 21, 2009. County Defendants maintain Plaintiff's claims should be dismissed for the following reasons: 1) they are barred by the *Rooker–Feldman* doctrine; 2) Plaintiff fails to state a claim in Count I and Count II (Plaintiff's federal claims); and 3) Plaintiff's state law claims also fail to state a claim. (Doc. 32.)

We conclude that to the extent that Plaintiff's claims are raised against all Defendants (Doc. 1) and his opposition brief (Doc. 38) essentially treats the three pending motions to dismiss as one, County Defendants' motion to dismiss is granted on the same bases as Cadle Defendants motion. With this decision, we decline to assess the merits of Plaintiff's state law claims.

■ Furthermore, we agree with the additional reasons County Defendants assert that dismissal of Counts I and II is proper. For example, not only did Plaintiff receive the notice required by the Procedural Due Process Clause, but the record also supports the conclusion that Plaintiff received the notice required by relevant Pennsylvania statute, 72 P.S. § 5860.602(a), and acknowledged receipt of same. (Doc. 32 at 21–22 (*citing* Doc. 1 ¶ 76; Doc. 6 ¶ 11).)

We also agree that Plaintiff's mention in Count I (his Procedural Due Process claim) of a violation of his First, Fourth, and Sixth Amendment rights (Doc. 1 p 142) is without merit. (Doc. 32 at 21–27.) Significantly, Plaintiff does not argue otherwise in his opposition brief. (*See* Doc. 38.) Though not discussed in connection with Count II (*see* Doc. 32 at 27–29), we conclude the mention of the same Constitutional Amendments in Count II of the Complaint (Doc. 1 p 145) is also without merit.

While County Defendants' accurately state the redundancy of some of Plaintiff's claims (Doc. 32 at 20 n. 4), and Plaintiff did not respond to this aspect of County Defendants' motion (*see* Doc. 38), with our decision on the merits of Plaintiff's claims, we need not discuss this issue further.

Finally, as we have concluded that it is proper to decline jurisdiction of Plaintiff's state law claims, we do not reach the merits of those claims and make no determina-

---

**24.** In Plaintiff's opposition brief, he states that in this case "the things sued upon are violation of procedural due process, equal protection and substantive due process under 42 U.S.C. § 1983." (Doc. 38 at 12.) From our reading of the record, this appears to be Plaintiff's first and only mention of "substan-

tive due process." Plaintiff's Complaint contains only two federal claims: Count I, "Violation of 42 U.S.C. § 1983 Procedural Due Process" (Doc. 1 at 39), and Count II, "Violation of 42 U.S.C. § 1983 Equal Protection." Thus, Plaintiff's Complaint does not assert a substantive due process claim.

tion on the arguments presented on the issues raised in Counts III through IX.

## D. DEFENDANT NOVA'S MOTION TO DISMISS

Defendant Nova filed this motion to dismiss (Doc. 28) on October 16, 2009, and it became ripe on December 7, 2009. Defendant Nova maintains Plaintiff's claims should be dismissed on the following bases: 1) the claims are barred by the applicable statute of limitations; 2) the claims are barred by the Loan Modification Agreement; 3) the claims are barred by the gist of the action doctrine; 4) Plaintiff has failed to plead the elements of a § 1983 claim in Count I; 5) Count II must be dismissed because Plaintiff has failed to state a claim against Defendant Nova; and 6) all of Plaintiff's state law claims must be dismissed. (Doc. 29.)

We make no determination on Defendant Nova's first three bases for dismissal. Similarly, we decline jurisdiction of Plaintiff's state law claims and make no determination on their merits.

As discussed in the two preceding sections of this Memorandum, we concur that Plaintiff's due process claim must be dismissed. We also agree with Defendant Nova's additional basis for dismissal of Plaintiff's equal protection claim, i.e., Plaintiff has not shown that Defendant Nova was a state actor for § 1983 purposes because he has not shown that Nova's conduct was " 'fairly attributable to the state.' " (*See* Doc. 29 at 16–17) (*citing Salley v. Rodriguez*, Civ. No. 07–4914, 2008 WL 65106, at *4 (D.N.J. Jan. 4, 2008)).

Based on the foregoing discussion, Defendant Nova's motion to dismiss (Doc. 28) is granted. As there are no federal claims asserted solely against Defendant Nova and the basis for dismissal of Plaintiff's federal claims applies equally to all Defendants, we conclude it is also proper to grant Defendant Nova's motion on the same bases as we grant Cadle Defendants' and County Defendants' motions.

## E. DEFENDANT SCHER

As noted previously, Defendant Scher has not acknowledged service or responded to the Complaint in any way. Insofar as there are no distinct claims against this Defendant that would indicate a different outcome, we conclude dismissal of this action against Defendant Scher is also appropriate.

### IV. Conclusion

For the reasons discussed above, the pending motions to dismiss are granted. Also for the reasons discussed, amendment of Plaintiff's federal claims would be futile in this case and Plaintiff will not be granted leave to amend his Complaint. Therefore, Plaintiff's federal claims, i.e., Counts I and II of his Complaint, are dismissed with prejudice. Because we decline jurisdiction of Plaintiff's state law claims, dismissal of Counts III through IX is without prejudice to Plaintiff raising them in state court. An appropriate Order follows.

### ORDER

AND NOW, THIS 2nd DAY OF FEBRUARY 2010, FOR THE REASONS DISCUSSED IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.  The Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(1) and (6) Filed on Behalf of Defendants, The Cadle Company II, Inc., Daniel C. Cadle, Michael Kermec, Doug Harrah, Tina Randazzo and Kevin Fogerty (Doc. 25) is GRANTED on the bases stated in the accompanying Memorandum;

2.  The Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P.

12(b)(6) (Doc. 28) is GRANTED on the bases stated in the accompanying Memorandum;

3. Defendants Luzerne County, Luzerne County Tax Claim Bureau, Mary Dysleski, Stephen A. Urban, Neil T. O'Donnell and James Blaum's Motion to Dismiss (Doc. 30) is GRANTED on the bases stated in the accompanying Memorandum;

4. Plaintiff's federal claims, Counts I and II of his Complaint (Doc. 1), are dismissed with prejudice;

5. Plaintiff's state law claims, Counts III through IX of his Complaint (Doc. 1), are dismissed without prejudice;

6. The Clerk of Court is directed to close this case.