John McTERNAN; Edward D. Snell; John Wood; Luanne C. Ferguson, Appellants

v.

CITY OF YORK, PENNSYLVANIA; Mark L. Whitman, Police Commissioner, in his Official Capacity; Jason Jay, Officer, in his Official Capacity

Planned Parenthood of Central Pennsylvania, Intervenor in District Court.

No. 07–2670.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 12, 2009.

Filed Aug. 24, 2009.

Dennis E. Boyle, Randall L. Wenger, Boyle, Neblett & Wenger, Camp Hill, PA, for Appellants.

Frank J. Lavery, Jr., James D. Young, Lavery, Faherty, Young & Patterson, Harrisburg, PA, for Appellees.

Sean E. Summers, Barley Snyder, York, PA, for Intervenor.

Before SLOVITER and BARRY, Circuit Judges, and POLLAK *, District Judge.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

We address this case in light of our recent decisions in *McTernan v. City of York*, 564 F.3d 636 (3d Cir.2009), *Holman v. City of York*, 564 F.3d 225 (3d Cir.2009), and *Snell v. City of York*, 564 F.3d 659 (3d Cir.2009). Although this case, like those cases, involves protestors at a health facili-

* Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

ty where abortions are performed, in this case the protestors seek to protest on a handicapped entrance ramp to the facility. Because doing so would block handicapped access to the ramp, and the protestors have the opportunity to stand immediately next to the ramp on the public sidewalk and communicate to those entering the facility, we affirm the District Court's decisions denying the preliminary injunction Plaintiffs sought and dismissing their action.

## I.

## Factual Background

The complaint alleges that the four plaintiffs (appellants on appeal), John McTernan, Edward D. Snell, John Wood, and Luanne C. Ferguson (collectively, the "Plaintiffs"), profess devout Christian beliefs, including a belief that their religion requires them to share these beliefs with others. Based on these religious beliefs, Plaintiffs protested against abortions outside a Planned Parenthood facility in the City of York, Pennsylvania (the "Facility").

The Facility is situated next to a public sidewalk and has a ramp leading to its front entrance that runs parallel to the sidewalk. The ramp has handrails on either side as well as a canopy above. A survey conducted by Plaintiffs showed that 2.9 feet of the ramp were constructed on the public right of way.

Based on this survey, McTernan sent a letter dated November 22, 2006, to Mark L. Whitman, the Commissioner of the York City Police Department, "requesting that [Whitman] require [Planned Parenthood] to ... remove the section that encroaches and extends over the property line." App. at 65. In this letter, McTernan also stated that he had notified the CEO of Planned Parenthood of the violation and requested that she cease hanging banners, at least one of which stated, inter alia, "Pledge–A–Protestor Campaign in Ef-

fect Today," App. at 66, between the canopy and the railing of the ramp. McTernan's letter noted that when the banners were still hanging two days later, he asked the on-site supervisor to remove them because they were in the public right of way. She declined to do so.

On November 29, 2006, Jason Jay, an officer with the City of York Police Department, was on duty outside the Facility. Plaintiffs, noting that a portion of the ramp and the banner was located on the public right of way, sought permission from Officer Jay to go on the ramp to communicate with clients entering the Facility. Officer Jay refused them permission, telling Plaintiffs that he would arrest them for trespass if they went on the ramp.

These allegations formed the basis of Plaintiffs' suit against Officer Jay, Commissioner Whitman, and the City of York, Pennsylvania (collectively, the "Defendants"), claiming violations of Plaintiffs' rights to the free exercise of religion, peaceful assembly, and freedom of speech. Plaintiffs sought (1) a declaratory judgment that Defendants' failure to allow them on the ramp was unconstitutional, (2) temporary and permanent injunctions restraining Defendants from prohibiting Plaintiffs access to the ramp, and (3) nominal damages, and costs and attorneys' fees.

The same day the complaint was filed, Plaintiffs filed a motion for a preliminary injunction to prevent Defendants from interfering with their "free exercise rights" and "First Amendment rights." App. at 77–78. The District Court held an evidentiary hearing on the preliminary injunction request. Shortly thereafter, Defendants filed a motion to dismiss, relying on federal regulations issued under the Americans with Disabilities Act ("ADA") governing handicapped accessible ramps. They cited, for example, 28 C.F.R. Part 36, App. A,

which requires that ramps for handicapped accessible buildings and facilities include a clear width of 36 inches, 28 C.F.R. Part 36, App. A § 4.8.3, a level landing at both the bottom and the top of the ramp, *id.* at § 4.8.4, edge protection for ramps like the one in question, which has a dropoff, *id.* at § 4.8.7, and handrails along both sides of the ramp, *id* at § 4.8.5(1). All of the requirements are applicable to the Facility. Additionally, as the Facility provides medical services, the ramp leading to the Facility must have an overhead canopy or overhanging roof. *Id.* at § 6.2.

At the preliminary injunction hearing, Defendants presented testimony from David Redshaw, who had been the Building Code Inspector for the City of York from September 2004 to December 2004, during which time he oversaw the renovation of the front of the Facility, including the construction of the ramp. Prior to working as the Building Code Inspector, Redshaw "was the rehab specialist for the Bureau of Housing Services for nearly five years." App. at 255. During that period, Redshaw became familiar with the various state and federal codes and regulations related to accessibility requirements.

Redshaw testified that it was York policy to permit an encroachment onto the public right of way when the intrusion was de minimis and was necessary to allow construction of a handicapped accessibility ramp. An intrusion was considered de minimus when the ramp encroached no more than three feet onto the sidewalk and left at least five feet of sidewalk remaining. Redshaw was personally aware of at least two other businesses in York with handicapped ramps encroaching in this manner on the public right of way, and had noticed other buildings encroaching on the sidewalk in a similar manner.

When Redshaw was asked "Are there any accessability issues, based on your experience, with people standing or congregating on a handicap accessible ramp that are not issues with the public sidewalk?", he replied that "[t]he building codes state that you may not obstruct or reduce the accessibility of this means of egress." App. at 268–69. Indeed, a regulation promulgated in connection with the ADA provides: "In buildings or facilities, or portions of buildings or facilities, required to be accessible, accessible means of egress shall be provided in the same number as required for exits by local building/life safety regulations." 28 C.F.R. Part 36, App. A § 4.1.3(9). The regulation also defines "means of egress" as "[a] continuous and unobstructed way of exit travel from any point in a building or facility to a public way." *Id.* at § 3.5.

After the hearing, the District Court denied the motion, finding that the ramp was a nonpublic forum. The Court concluded that because the static presence of a person on the ramp area, even if solely over the public right of way, would impede access, "it is entirely reasonable for Officer Jay to instruct individuals not to stand or congregate on the ramp." App. at 15. The Court further stated, "It is plain common sense that if an individual other than the fictional Ichabod Crane stood in the area of the ramp that encroaches onto the public right-of-way, there would necessarily be less than the required minimum clear width of 36 inches between the handrails as required by the ADA." App. at 12.

The District Court also held that, because Plaintiffs "are not hindered in delivering their message in the vicinity of [the Facility]," they would not be denied their First Amendment rights if the injunction were not granted. App. at 17. Moreover, the Court concluded that the City of York would be harmed if handicapped access to buildings were affected, a concern that was also within the public interest. The District Court therefore denied the prelimi-

nary injunction. Based on its ruling that the ramp was a nonpublic forum and that Plaintiffs had therefore suffered no constitutional injury, the District Court granted the motion to dismiss shortly thereafter.

## II.

## Standard of Review

■ The appeal was timely filed and this court properly has jurisdiction over both issues under 28 U.S.C. § 1291. This court reviews the District Court's decision on a motion to dismiss de novo. *AT & T v. JMC Telecom, LLC,* 470 F.3d 525, 530 (3d Cir.2006). We have stated that, "[i]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *Schrob v. Catterson,* 948 F.2d 1402, 1408 (3d Cir.1991) (citation omitted). In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, *Lum v. Bank of America,* 361 F.3d 217, 221 n. 3 (3d Cir.2004), and a court may take judicial notice of a prior judicial opinion.

■ Ordinarily, when reviewing a decision to grant or deny a preliminary injunction, this court reviews a district court's findings of fact for clear error, conclusions of law de novo, and the ultimate decision to grant or deny the preliminary injunction for an abuse of discretion. *Child Evangelism Fellowship of N.J. v. Stafford Twp. Sch. Dist.,* 386 F.3d 514, 524 (3d Cir.2004). However, when First Amendment rights are implicated, this court must conduct an independent examination of the factual record as a whole. *Id.*

## III.

## Discussion

This appeal concerns a preliminary injunction and a related motion to dismiss. We will address the preliminary injunction first, following the order in which they were addressed by the District Court.

## A. The Preliminary Injunction

■ When deciding whether to issue a preliminary injunction, a district court must consider: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *United States v. Bell,* 414 F.3d 474, 478 n. 4 (3d Cir.2005).

### 1. Probability of Success on the Merits

Plaintiffs' motion for the preliminary injunction asked the Court to enjoin the City and its officials from interfering with the "Plaintiffs['] free exercise rights in front of the Planned Parenthood facility" and to "[e]njoin the City of York from enforcing trespass statutes against the Plaintiffs in areas where they are not physically on Planned Parenthood's property." App. at 77–78.

Defiant trespass is defined under Pennsylvania law to include "enter[ing] or remain[ing] in any place as to which notice against trespass is given by . . . actual communication to the actor." 18 Pa.C.S.A. § 3503(b)(1). It is a defense to defiant trespass that "the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises." *Id.* at § 3503(c)(2). As it is undisputed that Plaintiffs had been told not to stand on the ramp, the question becomes whether the premises were open to members of the public and, if so, whether the conditions placed on the use of those premises that restrict the protestors' First

Amendment rights survive the appropriate level of scrutiny.

### a. The Type of Forum at Issue

■ The City offers no support for its assertion that the ramp should be considered private property. We will therefore accept that a portion of the ramp is located on public property. That is not dispositive, however, because we must first determine the type of forum that is at issue. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998).

■ The Supreme Court has identified three types of fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Id.* (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). Designated public fora must be "created by purposeful governmental action." *Arkansas Educ. Television Comm'n*, 523 U.S. at 677, 118 S.Ct. 1633. As none of the parties argue that the government has made the ramp in this case a designated public forum, it must be either a traditional public forum or a nonpublic forum.

Although public sidewalks have long been considered traditional public fora, *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 761, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), the Supreme Court has clarified that not all public sidewalks are public fora. In *United States v. Kokinda*, the Court distinguished a sidewalk that ran between a post office parking lot and a post office from a quintessential public sidewalk because, rather than being part of the transportation grid of the city, the sidewalk "was constructed solely to provide for the passage of individuals engaged in postal business." 497 U.S. 720, 727–28, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). The Court specifically noted that

"[p]ostal entryways ... may be open to the public, but that fact alone does not establish that such areas must be treated as traditional public fora under the First Amendment." *Id.* at 729, 110 S.Ct. 3115. Because the "sidewalk at issue [did] not have the characteristics of public sidewalks traditionally open to expressive activity," the Court held that it was a nonpublic forum. *Kokinda*, 497 U.S. at 727, 110 S.Ct. 3115.

Here, the District Court analogized the sidewalk at issue to the postal sidewalk considered in *Kokinda*, stating:

> The Planned Parenthood ramp bears a striking resemblance to the sidewalk in *Kokinda*. Like the *Kokinda* sidewalk, the Planned Parenthood ramp runs parallel to the street-level sidewalk, which is a public passageway. They both lead from the parking area to the front door of the facility and were constructed solely for the passage of individuals engaged in business at the facility. Additionally, the Planned Parenthood ramp was constructed for the *specific* purpose of complying with the ADA, thereby ensuring that disabled patrons of the facility were able to negotiate the space between the parking area and the entrance of the facility. There is nothing in the record establishing that the ramp was constructed to facilitate expressive activity, daily commerce, or the life of the neighborhood. To the contrary, the ramp's purpose was singular, to effectuate access of patrons, both able and disabled, to the Planned Parenthood facility. To find otherwise would be absurd.

App. at 14–15 (emphasis in original).

We agree with the reasoning of the District Court. The diagram and images of the ramp in question in the appendix make clear that there is no way to build an entrance ramp to the Facility that would comply with the ADA that would not rest

on top of a portion of what was formerly a public sidewalk. However, the ramp is distinct from the sidewalk and serves a separate purpose. We agree with the District Court that any other conclusion would be "absurd." App. at 15. We conclude, as did the District Court, that the ramp is a nonpublic forum.

### b. The Relevant Level of Scrutiny

■ We must next consider whether the restriction placed on that nonpublic forum, preventing the protestors from standing on it, is reasonable and not an effort to block expression merely because the government disagrees with the view of the speaker. *Kokinda*, 497 U.S. at 730, 110 S.Ct. 3115. "[C]onsideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved." *Id.* at 732, 110 S.Ct. 3115 (alteration in original) (quoting *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 650–51, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)).

In this case, the ramp is the size required for a handicapped accessible ramp and is designed for people to enter and exit the Planned Parenthood Facility. The record shows that if a person were to stand on the ramp it would no longer have the required handicapped clearance and the presence of a static body would block access to one of the two required handrails. It is also relevant that because the ramp parallels the sidewalk, a protestor can walk next to someone entering the building and continue talking to that person. In light of the availability of a protestor's access to the desired audience, it is certainly not unreasonable to preclude the protestor from standing on the ramp itself, thereby blocking the handicapped accessibility of the structure.

This case therefore differs from our prior *McTernan* decision, which held that the reasonableness of prohibiting a protestor from walking in an alley adjacent to the Facility while allowing persons associated with the Facility to walk in the alley was a jury question. *McTernan*, 564 F.3d at 656. Not only was the alley in that case a traditional public forum, but questions remained as to whether the restrictions imposed were necessary for the safety of those in the alley, which depended on the traffic level and protestor activity, among other factors. *Id.* No such questions are present in this case, where the forum is non public, and the restrictions are the reasonable and necessary response to ADA regulations. *See* 28 C.F.R. Part 36, App. A §§ 3.5, 4.1.3(9).

The District Court did not hold merely that Plaintiffs were unlikely to succeed on the merits; it held instead that they had no chance of success on the merits. We see no reason to disturb those conclusions. Although that holding is dispositive on the appeal of the order denying the preliminary injunction, we turn to the remaining factors relevant to the preliminary injunction as they may also have an impact on our review of the dismissal order.

### 2. Irreparable Injury

■ The District Court acknowledged that loss of First Amendment freedom for any period of time can be considered irreparable harm, but stated that such harm had not occurred in this case in light of its holdings that the ramp was not a public forum and the regulation was reasonable.

We agree with the District Court that there was no irreparable harm because there was no harm of any type. The protestors were told they were allowed to protest on the public sidewalk next to the ramp. We have previously upheld regulations that resulted in a far greater reduc-

tion in the ability to communicate, even when the forum at issue was considered a public forum.

In *Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir.2008), Philly Pride, an organization for lesbian, gay, bisexual, and transgendered ("LGBT") individuals, organized OutFest, an annual street festival to celebrate "National Coming Out Day." *Id.* at 189. The event took place on the streets and sidewalks of a number of city blocks, an area which was closed off for the event by permit. *Id.* The events were free and open to the public. *Id.* Repent America, an organization whose members believe that homosexuality is a sin and that they have a religious duty to share this view with others, entered OutFest to communicate their message. *Id.* at 190–91. They did so by congregating near an OutFest stage and "singing loudly, playing instruments, displaying large signs, and using microphones and bullhorns." *Id.* at 191.

When a musical program began on the stage, the members of Repent America were ordered by police to move further away from the stage. *Id.* After receiving complaints that the protesters were blocking access to vendors at OutFest, the police requested the protestors to move again. *Id.* They were asked to move to a location near a popular gay bar within the vicinity of OutFest, but they refused. *Id.* After an oral warning by the police, the protestors were arrested for disorderly conduct. *Id.* Of relevance to this appeal, their subsequent suit against the city included a First Amendment claim that Philadelphia had impermissibly prohibited their speech based on content. *Id.*

On appeal from an order of dismissal, this court noted that " '[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without re-

gard to the nature of the property or to the disruption that might be caused by the speaker's activities.' " *Id.* at 196 (quoting *Cornelius*, 473 U.S. at 799–800, 105 S.Ct. 3439).

In analyzing whether the new location had provided the ample alternative channel required for regulation of speech in a public forum, we noted that:

> Although "[a]n alternative is not ample if the speaker is not permitted to reach the 'intended audience,' " *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir.1990) (citation omitted), that is not what occurred here. Admittedly, Appellants' intended audience was the LGBT OutFest attendees, whom they wanted to instruct about what they believed were the sins of homosexuality. The police officers' direction that Appellants move to a less congested area, albeit still within OutFest, may have reduced their potential audience. Nonetheless, Appellants have not demonstrated that the avenues that remained were inadequate.

*Id.* at 202. While the protestors in Startzell had admittedly experienced a diminution in their potential audience, nothing of the sort occurred here. The protestors here still have access to every person entering the clinic through the ramp, as they can walk alongside the ramp next to that person, mere inches from where they wished to be. We therefore reaffirm that the protestors have suffered no injury from such a restriction.

**3. Likelihood of Harm to the Defendants**

 Turning to the third issue to be considered in the preliminary injunction inquiry, the District Court noted that allowing the protestors on the ramp would prevent someone in a wheelchair from using the ramp and could lead to violence

between protestors and the patrons of the Planned Parenthood Facility. We agree that even a partial blocking of handicapped access to the building is an important harm to the Facility, significant enough to uphold the District Court ruling for that reason alone. We therefore need not consider whether the District Court's concern about possible violence had a basis in the record.

### 4. The Public Interest

■ Finally, we look to the public interest. The District Court noted that the public interest favors both guaranteeing First Amendment rights and allowing handicapped access to buildings. However, as discussed *supra,* the protesters have not experienced a diminution in their First Amendment rights because they are allowed to protest in the immediate vicinity of the ramp despite being prohibited on the ramp itself. It follows that the only remaining public interest presented by the case is that of ensuring unrestricted handicapped access to facilities. Thus, the public interest factor also supports denial of the injunction.

As the protesters have suffered no diminution in their rights, and the interest of Defendants and the public both favor denying the motion for a preliminary injunction, we will affirm the District Court's order denying the motion for a preliminary injunction.

### B. The Motion to Dismiss

■ We must review the District Court's grant of the motion to dismiss Plaintiffs' complaint in light of the Supreme Court's recent discussion of motions to dismiss in *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In that opinion, the Court clarified some of the uncertainty as to the scope of its prior opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and forcefully held

that *Twombly* was not limited to antitrust complaints but instead enunciated the standard applicable to review of all complaints. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). It is in light of that instruction that we review Plaintiffs' argument that the District Court erred in this case in granting the motion to dismiss.

■ Plaintiffs argue that the District Court erred in relying on the findings and conclusions it reached in its ruling denying Plaintiffs' motion for a preliminary injunction. In most instances, a ruling such as that made by the District Court under Fed.R.Civ.P. 12(b)(6) would have to undergo the more extended process required by Rule 56. However, we have previously suggested that a district court's findings and conclusions on a preliminary injunction motion could "have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again." *Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency,* 126 F.3d 461, 474 n. 11 (3d Cir.1997) (citations omitted). In *Hawksbill,* we noted the language in *Commodity Futures Trading Commission v. Board of Trade,* 701 F.2d 653, 657 (7th Cir.1983), that "findings made in preliminary injunction decisions have preclusive

effect 'if the circumstances make it likely that the findings are accurate [and] reliable.'" 126 F.3d at 474 n. 11.

Such cases may be rare, but this is such a case. A central issue in the District Court's decision on the preliminary injunction was whether Plaintiffs had a right to protest on the ramp leading up to the entrance of the Facility. After holding an evidentiary hearing, the District Court held that Plaintiffs had no probability of success on the merits, that the ramp leading to the Facility was a nonpublic forum, and that "it [was] entirely reasonable for Officer Jay to instruct individuals not to stand or congregate on the ramp, because their static presence on the ramp necessarily conflicts with the ramp's accessibility requirements." App. at 15–16. After reaching these conclusions, the District Court noted that this decision effectively resolved the issues on Defendants' motion to dismiss.

As the issues on the two motions were exactly the same, Plaintiffs had a full opportunity to present their arguments at the hearing on the preliminary injunction—i.e., whether the ramp leading to the Facility is a public forum, and there is no reason to prolong the inquiry.

▆▆▆ Plaintiffs argue that the District Court was required to accept the statement in the complaint that the ramp at issue was a public forum. We disagree. That allegation in the complaint was a legal conclusion, which the District Court need not accept in ruling on a motion to dismiss. As the Court stated in *Iqbal,* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S.Ct. at 1949. Moreover, Plaintiffs' complaint here included attachments that depicted the ramp at issue and the extent of ramp overlapping the public sidewalk. This permitted the District Court to analogize to *Kokinda,* 497 U.S. at

727–28, 110 S.Ct. 3115, in holding that the portion of the ramp located on public property was a nonpublic forum.

Plaintiffs' allegations in the complaint of infringement of their First Amendment rights are viable only if the ramp is a public forum. The District Court's finding that it is not, and our affirmance of that finding, is supported by the documents submitted with the complaint. If Plaintiffs were not excluded from a public forum, they have failed "'to state a [First Amendment] claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

Photographs of the ramp in question were attached to the complaint. Those photographs make plain that a protestor can walk alongside the entire duration of the ramp, and thereby converse with patients entering the clinic, while they simultaneously demonstrate that the ramp allows only for passage to and from the Facility. After *Kokinda,* there can be little doubt that such a structure is a nonpublic forum. That conclusion was reinforced by the testimony in the preliminary injunction hearing that building handicapped ramps onto the public sidewalk was routinely allowed in the City of York as long as any encroachment was minimally intrusive, but that testimony was not necessary to reach the conclusion that the ramp at issue was a nonpublic forum. Moreover, Federal Rule of Evidence 201(b)(2) authorizes the District Court to consider the federal regulations governing handicapped access to buildings as adjudicative facts, further supporting the conclusion that the ramp at issue was a nonpublic forum.

The small entry ramp at issue here is unlike the alley in *McTernan,* 564 F.3d 636, *Holman,* 564 F.3d 225, and *Snell,* 564 F.3d 659, where Plaintiffs alleged that they were treated differently than other people

seeking to use the alley. Here, the presence of persons who seek to congregate on the ramp, whether protestors or other, inherently impedes access to the clinic for any person attempting to use the handicapped ramp for access to the building. There is no allegation in the complaint that persons other than protestors are permitted to stand on the ramp to interact with persons entering the Facility while the protestors are not.

▮ Plaintiffs also argue that prohibiting them from the ramp violated their First Amendment right to the free exercise of religion. Defendants do not dispute that Plaintiffs' actions are motivated by sincerely-held religious beliefs. However, although the free exercise clause does protect religious expression, it does not afford absolute protection. As we stated in *McTernan:*

> Where a law is "neutral and of general applicability[,]" it "need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (citing *[Employment Div., Dep't. of Human Res. of Or. v.] Smith* [494 U.S. 872,] 880[, 110 S.Ct. 1595, 108 L.Ed.2d 876] (1990)). If, on the other hand, the government action is not neutral and generally applicable, strict scrutiny applies, and the government action violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,* 309 F.3d 144, 165 (3d Cir.2002). Government action is not neutral and generally applicable if it burdens religious conduct because of its religious motivation, or if it burdens religiously motivated conduct but exempts substantial comparable conduct that is not religiously motivated. *See Hialeah,* 508 U.S. at 543–46, 113 S.Ct. 2217; *Blackhawk v. Pennsylvania,* 381 F.3d 202, 209 (3d Cir. 2004).

*McTernan,* 564 F.3d at 647.

In the complaint, Plaintiffs do not allege that they are treated differently than others, and instead claim only that "Defendants' actions target and are intended to chill, restrict, and inhibit Plaintiffs from exercising their religion in this way" and that "Defendants' actions constituted a substantial burden on Plaintiffs['] religious exercise, and Defendants lacked a compelling justification." App. at 48. Once again, these are merely conclusory allegations, and, as the Court stated in *Iqbal,* "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).[1]

# IV.

## Conclusion

For the reasons set forth we will affirm the District Court's orders denying Plaintiffs' motion for a preliminary injunction and dismissing the complaint.

---

1. Even if the motion to dismiss were converted to a motion for summary judgment, affirmance would be appropriate. It was at most harmless error to fail to notify the parties of the intended conversion, *Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989), as dismissal would nevertheless have been proper. Given the legal conclusions the District Court was permitted to draw at this stage of the proceedings, the complaint failed to state sufficient facts to proceed beyond this point.