**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-1726
_____

JOHN C. GAWLAS,
Appellant

v.

CHRISTOPHER W. KING, in his official and individual capacity; JAMES A. WEBER, in his official and individual capacity; J. SCOTT ALBRECHT, in his official and individual capacity; JANICE R. CMAR, in her official and individual capacity; VICKIE IELASE, in her official and individual capacity; TRACEY P. KHALIL, in his official and individual capacity; MARY K. REYNOLDS, in her official and individual capacity; JACK MAPLE, in his official and individual capacity; THE BOROUGH OF JEFFERSON HILLS

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-11-cv-00742)
District Judge: Honorable Terrence F. McVerry

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 25, 2012

Before: HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges.*

(Opinion Filed: January 24, 2013)

_____

OPINION

_____

VANASKIE, *Circuit Judge.*

Appellant John Gawlas, a police officer for the Borough of Jefferson Hills, Pennsylvania ("Borough"), brought a § 1983 action alleging First Amendment retaliation and denial of due process in connection with the termination of the Borough's K-9 program that he handled. He sues the Borough, several members of the Borough council, and its chief of police (collectively "Defendants"). The District Court granted Defendants' Motion to Dismiss Gawlas's Amended Complaint and denied Gawlas's Motion for Reconsideration. For the following reasons, we will affirm.

I.

Gawlas has worked as a police officer for the Borough of Jefferson Hills since 1990, and for approximately fifteen of those years, served as the K-9 officer. Gawlas also served as the union steward at various unspecified times. Defendant Jack Maple is chief of police of the Borough of Jefferson Hills Police Department. Maple is a political ally of Defendant Borough Council Member Christopher King and King's mother, Carol, who worked at the police department.

Gawlas alleges that on several occasions, Maple, Christopher King, and Carol King "wrongfully admonished Plaintiff because of his relationships and political affiliations with other members of [the] council and appointed officials . . . ." (App. 57, ¶ 12.) Gawlas also supported his former supervisor, Michael D'Alessandro, to succeed Maple as police chief after Maple's first term as chief expired. Another individual, Martin Reagan, however, ultimately was appointed as chief.

Maple resumed the position of police chief in September 2010 when Reagan's contract was not renewed. Both immediately before and after this appointment, Maple

2

allegedly "made it known that he intended to eliminate the K-9 program." (App. 58, ¶ 17.) On December 13, 2010, the Defendant council members unanimously adopted the 2011 budget, which eliminated the K-9 program. Gawlas had no notice that the council would be taking action to eliminate the K-9 program as part of the budget.

Gawlas asserts that the elimination of the K-9 program constituted an adverse employment action in retaliation for his "political affiliation and/or role with the union." (App. 59, ¶ 19.) He claims that this retaliatory conduct was consistent with Defendants' practice of retaliation based on employees' political affiliations. As examples of retaliation, Gawlas avers that he was "shorted what was owed to him for services rendered as the Borough's K-9 officer," (App. 65, ¶ 47), and that the Borough manager placed on hold, without explanation, Gawlas's request for payment of compensatory time before his daughter's wedding—a request which the Borough had granted "numerous times over his career . . . ." (App. 66, ¶ 50.)

The Borough subsequently hired a company to evaluate the K-9 program. The results of the evaluation, including what Gawlas characterizes as "inaccurate and/or misleading" information about the cost of the K-9 program and his compensation, (App. 69, ¶ 59), were made public.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have appellate jurisdiction under 28 U.S.C. § 1291. On appeal, Gawlas challenges the District Court's decisions that the Amended Complaint did not present a viable retaliation or due process claim and that further amendment of the pleading would be futile.

3

We review a district court's dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure de novo. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## A.     First Amendment Retaliation Claim

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Gawlas argues that the District Court erred in (1) concluding that he did not plead sufficient facts about his political affiliation or union activities to support a plausible inference that he engaged in protected activity, and (2) determining that no causal connection existed between the allegedly protected activity and any retaliation.

We need not decide whether the Amended Complaint adequately alleged that Gawlas engaged in any protected activity because we find that he has failed to allege facts raising an inference of a causal connection between such activity and the alleged retaliation.

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof

4

> the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted) (internal quotation marks omitted).

There is nothing in the Amended Complaint to establish any "suggestive temporal proximity between the protected activity and the allegedly retaliatory action . . . ." *Id.* Gawlas does not even allege when his union activity occurred. Similarly, there is no indication as to when Gawlas supported D'Alessandro to succeed Maple as chief of police or how his support of D'Alessandro played any role in the elimination of the K-9 program.

Nor do the averments of the Amended Complaint support an inference that Defendants engaged in a pattern of antagonistic acts to retaliate against Gawlas for his union activity or political affiliation. The mere fact that Gawlas engaged in conduct he claims to be protected by the First Amendment and the Defendants took actions with which Gawlas disagreed does not suffice to present a plausible retaliation claim. As a result, we agree with the District Court that Gawlas has failed to state a First Amendment retaliation claim.

## B. Due Process Claims

Gawlas also asserts that the Borough's elimination of the K-9 officer position by adopting the annual budget violated his procedural due process rights. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth

5

Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233-34 (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

The District Court found that Gawlas did not have a protected property interest affected by the elimination of the K-9 program because he "is still employed as a police officer by the Borough, and at most, has lost an opportunity to earn overtime pay." *Gawlas*, No. 2:11-cv-742, 2012 WL 171344, at *5 (W.D. Pa. Jan. 20, 2012). Relying on Section 1121 of the Pennsylvania Borough Code, Gawlas argues that Pennsylvania law provides police officers an expectation of continued employment and establishes certain civil service procedures before an officer is removed. *See* 53 Pa. Cons. Stat. § 46121(a)(2) (referring to civil service provisions for the "removal, suspension or reduction in rank" of a police officer). Gawlas's reliance on these provisions is misplaced, as he has not alleged that Defendants removed or suspended him from the police force or reduced his rank. Furthermore, Gawlas has failed to substantiate an entitlement to the specific K-9 officer position or opportunities for overtime pay that he alleges he lost when the K-9 program was eliminated. In short, we agree with the District Court that Gawlas cannot plead that the elimination of the K-9 program deprived him of any protected property interest.

Gawlas also claims that Defendants deprived him of his liberty interest in his reputation by publishing false or misleading information about the cost of the K-9 program and his compensation. Of course, "reputation *alone* is not an interest protected by the Due Process Clause. . . . Rather, to make out a due process claim for deprivation

6

of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (footnote omitted) (citations omitted) (internal quotation marks omitted).

While it is not necessary for a government employee to show that he or she has a property interest in continued employment to meet the "plus" prong of the "stigma-plus" test, *id.* at 238, Gawlas has not alleged that he had *any* right or interest—property or otherwise—in his position as the K-9 officer versus a position as a non-K-9 officer at the same rank and compensation. Absent such an allegation, we agree with the District Court that Gawlas cannot show that Defendants infringed any protected liberty interest. Accordingly, his due process claim fails.[1]

### C.

Finally, Gawlas asserts that the District Court abused its discretion by not allowing him an opportunity to file a second amended complaint. "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

Notably, the District Court *did* provide Gawlas an opportunity to amend his original Complaint when it dismissed it without prejudice. Gawlas argues that, in dismissing his original Complaint, the District Court did not address the merits of his allegations, but merely allowed him to amend his Complaint to include declarations he

---

[1] Having concluded that Gawlas has failed to state a due process claim against Defendants with respect to the elimination of the K-9 program, we need not address the District Court's holding that the individual Defendants are entitled to legislative immunity.

7

had erroneously filed with his response to Defendants' first Motion to Dismiss. Rather, he contends that the District Court concluded his factual allegations were insufficient only in its Memorandum and Order dismissing his Amended Complaint.

We find this argument unpersuasive. Upon dismissing Gawlas's original Complaint without prejudice, the District Court cautioned that:

> Defendants have raised numerous legal challenges to the claims asserted in this case. If Plaintiff chooses to file an amended complaint, it will be important to address all of these alleged shortcomings *to assure that the amended complaint contains sufficient factual allegations to render the claim(s) "plausible" in compliance with the pleading standard . . .* as further opportunity to amend is unlikely to be granted.

*Gawlas v. King*, No. 2:11-cv-742, 2011 WL 4498961, at *2 (W.D. Pa. Sept. 27, 2011) (emphasis added). Thus, Gawlas had an opportunity to amend his Complaint to ensure his factual allegations were sufficient to state a plausible claim. When Gawlas failed to do so, the District Court did not abuse its discretion by not permitting him a third opportunity to state a valid claim.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.