**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1144
_____

HEALTH SCIENCE FUNDING, LLC,

Appellant

v.

THE NEW JERSEY DEPARTMENT OF HEALTH AND HUMAN SERVICES;
COMMISSIONER NEW JERSEY DEPARTMENT OF HUMAN SERVICES

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-15-cv-02933)
District Judge:  Honorable Madeline Cox Arleo

_____

Submitted under Third Circuit LAR 34.1(a)
on July 12, 2016

Before:  SMITH, JORDAN and RENDELL <u>Circuit Judges</u>

(Opinion filed: July 25, 2016)

**RENDELL**, <u>Circuit Judge</u>:

Health Science Funding, LLC (HSF) sued the New Jersey Department of Human Services (DHS) and its acting commissioner, Elizabeth Connolly, for allegedly violating a provision of the Medicaid Act governing drug reimbursements. The District Court dismissed HSF's complaint, and HSF appealed. We will affirm the District Court's order.

**I.**

Because we write primarily for the parties, who are familiar with the facts and procedural history of this case, we recite only a brief summary here. HSF sells Prastera, a lupus treatment. HSF alleges that, in 2014, it signed a rebate agreement with the Centers for Medicare and Medicaid Services (CMS) that required DHS, as CMS's agent in New Jersey, to pay for Prastera for Medicaid recipients, but that DHS has refused to do so. HSF sued DHS and Connolly in her official capacity pursuant to 42 U.S.C. § 1983 and claimed that DHS's failure to pay for Prastera violated the Medicaid Act, relying on 42 U.S.C. § 1396a(a)(54). The District Court dismissed this claim, holding that § 1396a(a)(54) does not create a federal right, and so HSF cannot enforce a violation of it through § 1983.[1] HSF appeals that ruling.[2]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court also dismissed HSF's other claim, which alleged a violation of the Administrative Procedure Act. HSF has not challenged that ruling on appeal.

## II.

"In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). In *Blessing*, the Supreme Court articulated the three factors to which it has traditionally looked "when determining whether a particular statutory provision gives rise to a federal right":

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Id.* at 340–41 (internal citations and quotation marks omitted).

But a court's inquiry does not end here. In *Gonzaga University v. Doe*, the Court noted that *Blessing* had been interpreted by some courts as "allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect; something less than what is required for a statute to create rights enforceable directly from the statute itself under an implied private right of action." 536 U.S. 273, 283 (2002). The Court "reject[ed] the notion that [its] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Id.* According to the Court, the fundamental question in determining whether a statute confers a federal right is whether Congress expressed its intent to create

---

² The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We "review[] the District Court's decision on a motion to dismiss de novo." *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009).

3

such a right "in clear and unambiguous terms." *Id.* at 290. To answer that question, a court must examine whether the "statute by its terms grants . . . private rights to any identifiable class"—that is, whether its text is "phrased in terms of the persons benefited." *Id.* at 284 (citations and internal quotation marks omitted).

We have interpreted *Gonzaga University* as requiring "us to first apply the three components of the *Blessing* test and then, to inquire into whether the statutes in question unambiguously confer a substantive right." *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 527 (3d Cir. 2009). Applying this inquiry in *Grammer*, we held that a plaintiff whose mother had died while she was a resident in a state-run nursing home could sue the facility under § 1983 for allegedly violating certain provisions of the Medicaid Act that established standards of care in these nursing homes. Under these provisions, for example, a nursing home was required to "care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident." *Id.* at 524 (citing 42 U.S.C. § 1396r(b)(1)(A)). A nursing home resident was also guaranteed "[t]he right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for the purpose of discipline or convenience and not required to treat the resident's medical symptoms." *Id.* (citing 42 U.S.C. § 1396r(c)(1)(A)(ii)). We first concluded that these provisions easily satisfied the *Blessing* factors. We next determined that, in these provisions, Congress "use[d] rights-creating language sufficient to unambiguously confer individually enforceable rights," emphasizing how it had employed language that stressed "explicitly identified rights" of "residents." *Id.* at 530–

4

31. We thus held that the plaintiff could enforce these statutory provisions via § 1983, as they satisfied "both *Gonzaga Univ.*'s insistence on rights-creating language as evidence of Congressional intent and *Blessing*'s remaining factors." *Id.* at 532; *see also, e.g.*, *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 190 (3d Cir. 2004) (holding that other provisions of the Medicaid Act created federal rights enforceable via § 1983 because they not only satisfied the *Blessing* factors but "conferred specific entitlements on individuals in terms that could not be clearer" (citation and internal quotation marks omitted)).

Here, by contrast, § 1396a(a)(54) states simply that, if a state plan "provides medical assistance for covered outpatient drugs (as defined in section 1396r-8(k) of this title)," that plan must "comply with the applicable requirements of section 1396r-8 of this title." Although 42 U.S.C. § 1396r-8, in turn, effectively requires a state to pay for a drug that is subject to a rebate agreement between a drug manufacturer and the federal government, *see Pharmaceutical Research and Manufacturers of America v. Walsh*, 538 U.S. 644, 652 (2003), HSF has not pointed to any specific language in the text of § 1396r-8 that clearly and unambiguously evidences Congress's intent to grant a drug manufacturer like itself a federal right to enforce a state's failure to do so. Nor can we find any. Section 1396a(a)(54) therefore does not convey "an unambiguous articulation and conferral of [a] right[] by Congress," *Sabree*, 367 F.3d at 188, and "entirely lack[s] the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights," as the District Court correctly held, *Gonzaga Univ.*, 536 U.S. at 287 (citations omitted).

For these reasons, we will affirm the judgment of the District Court.

5