**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1243
_____

NORCOM RESEARCH, LLC,
                                            Appellant

v.

NET2PHONE GLOBAL SERVICES LLC
_____

No. 22-1293


NORCOM RESEARCH LLC

v.

NET2PHONE GLOBAL SERVICES LLC,
                                            Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-12592)
District Judge: Hon. Stanley R. Chesler
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 24, 2023

Before: HARDIMAN, KRAUSE, and MATEY, *Circuit Judges*.

(Filed: January 30, 2023)

_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

Norcom Research, LLC appeals the District Court's orders dismissing its claims for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. We will affirm, essentially for the reasons stated by the District Court.[1]

I

This appeal involves a contract dispute arising under New Jersey law. Norcom seeks commissions it claims are due under its contract with Net2Phone Global Services, LLC (N2P). N2P sells voice-over IP and cloud-computing telephone services. Norcom recruits independent sales companies (ISCs) to sell telephone, energy, and electricity services to third parties. In June 2015, Norcom and N2P entered a contract under which Norcom would recruit ISCs to sell N2P's services. If the ISCs that Norcom recruited generated sales for N2P, Norcom was entitled to commissions based on a percentage of the net revenue generated by those sales.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court exercised diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

Over the next year, the parties signed four written amendments to the contract documenting twenty-five ISCs that Norcom referred to N2P. But on August 15, 2016, N2P exercised its right to terminate the contract.

Norcom sued N2P in the United States District Court for the District of New Jersey for breach of contract, fraud, breach of the duty of good faith and fair dealing, unjust enrichment, rescission for unconscionability, and violation of the New Jersey Sales Representatives' Rights Act (SRRA). Norcom alleged that, as of the filing of its suit, it had not received any commissions from N2P. Norcom attached to the complaint the contract with N2P and numerous exhibits.[2] N2P moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims in Norcom's Second Amended Complaint.

The District Court granted in part and denied in part N2P's motion. *Norcom Rsch., LLC v. Net2Phone Glob. Servs., LLC*, 2021 WL 1153140, at *1 (D.N.J. Mar. 26, 2021). It dismissed Norcom's breach of contract claim for commissions from ISCs that were not listed on an amendment to the contract.[3] *Id.* at *4. The Court found that Section 1.3 of the contract "makes it clear that Norcom could only receive commissions for referring an ISC if the parties later entered into a signing [sic] amendment regarding that specific

---

[2] We may review documents attached to a complaint in deciding a motion to dismiss. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

[3] This determination also mandated dismissal of Norcom's SRRA claim as to those non-listed ISCs. *See* N.J. Stat. Ann. § 2A:61A-2.

ISC." *Id.* The Court explained that the written amendment requirement protected N2P

from paying commissions to two recruiters for the same referral. *Id.*

The District Court also dismissed Norcom's breach of the implied covenant of

good faith and fair dealing claim because "there [was] no indication here that N2P acted

in bad faith" and N2P "demonstrated its willingness to act in good faith by entering into

four amendments" to the contract. *Id.* at *6. And the Court dismissed Norcom's unjust

enrichment claim as duplicative of its breach of contract claim because Norcom did not

challenge the validity of the contract.[4] *Id.* The Court later granted Norcom's motion to

voluntarily dismiss with prejudice its surviving claims for violation of the SRRA and

breach of contract as to ISCs memorialized on written amendments to the agreement.

This timely appeal followed.

## II

## A

Norcom first argues that N2P owes commissions for all ISCs that Norcom

recruited, even if those ISCs were not incorporated into the contract via written

amendment, because the contract required only that Norcom refer the ISC to N2P. We

disagree.

In relevant part, the contract states:

> 1.3 Referral of Other Independent Sales Companies: [Norcom] may refer
> other independent sales companies (each an "ISC") to N2P, whose purpose
> will be to refer Contacts to N2P. [Norcom] shall provide to N2P, in writing,

---

[4] The District Court also dismissed Norcom's fraud and recission claims, *id.* at *5, *7.
Norcom does not appeal their dismissal.

the following information regarding each ISC: (i) name, (ii) address, (iii) telephone number, (iv) nature of business, and (v) any other information requested by N2P. Each such ISC shall enter into a separate agreement with N2P and shall be paid a Commission directly by N2P (pursuant to the terms agreed to by N2P and such ISC), not by [Norcom]. The referral fee that [Norcom] shall receive in connection with the referral of such ISC to N2P shall be five percent (5%) of the Net Revenues generated by such ISC's Contacts, and shall be memorialized in a separate signed writing which shall be added to this Agreement as an Exhibit.

App. 79. The provision sets forth certain conditions precedent for Norcom to receive a commission for referring an ISC to N2P—Norcom must provide, in writing, certain identifying information for the ISC; the ISC must enter into a separate written agreement with N2P; and the ISC referrals must be memorialized in a separate signed writing attached to the contract.

The contract "as expressed by the words employed, when read and construed as a whole" does not entitle Norcom to commissions for referred ISCs that are not memorialized in a signed writing. *Vanguard Telecomms., Inc. v. S. New England Tel. Co.*, 900 F.2d 645, 651 (3d Cir. 1990) (citation omitted). Contrary to Norcom's assertion that memorialization was a mere course of dealing or "perfunctory procedure" adopted by the parties, Norcom Br. 12, the contract states that "[t]he referral fee that [Norcom] shall receive in connection with the referral of such ISC to N2P . . . *shall* be memorialized in a separate signed writing which *shall* be added to this Agreement as an Exhibit." App. 79 (emphasis added). Norcom even appears to concede that a separate signed amendment was contractually required. *See* Norcom Br. 14 ("[R]equiring N2P to place all Norcom-recruited ISCs on a written, signed amendment would not constitute a change [in the contract] because N2P was already required to place all ISCs on a written amendment

5

once the ISCs were recruited by Norcom. In fact, memorializing the names was a requirement of the Agreement rather than a change in terms."); Norcom Br. 13 (describing Section 1.3 as "requir[ing] only a memorialization in a separate signed writing after the ISC has already been referred by Norcom").

Section 6.4 of the contract further rebuts Norcom's contention that Section 1.3's writing requirement merely served to confirm a "'deal' that was already done." Norcom Br. 13. Section 6.4 permits N2P "to enter into the same or similar [referral] arrangements" with other entities, highlighting the need for a written record of ISCs referred by Norcom to avoid multiple referral agencies claiming commissions on the same ISCs. App. 81; *see also Norcom*, 2021 WL 1153140, at *4. Reading the contract "as a whole in a fair and common sense manner," Norcom is entitled to commissions only for ISCs that were memorialized in a separate, signed amendment. *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009).[5]

Finally, the parties' conduct confirms our interpretation of the contract. *See Philips Elecs. & Pharm. Indus. Corp. v. Leavens*, 421 F.2d 39, 45 (3d Cir. 1970) ("A well recognized principle of contract law requires that the terms of a contract be interpreted in

---

[5] Norcom also argues that requiring ISCs to be identified in written amendments made N2P's obligation to pay commissions optional because N2P exercised sole discretion whether to include a Norcom-recruited ISC in an amendment. Norcom forfeited this argument by failing to raise it in the District Court. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). Moreover, the contract is not illusory because the covenant of good faith and fair dealing obliged N2P to memorialize in writing Norcom-recruited ISCs. *See In re Cendant Corp. Litig.*, 264 F.3d 286, 300 (3d Cir. 2001) ("An implied obligation to use good faith is enough to avoid the finding of an illusory promise.") (citation omitted).

6

light of the meaning which the parties themselves have attached to them as evidenced by their subsequent conduct."). Norcom asked N2P to prepare amendments for ISCs that it referred, *see* App. 124, App. 165–67, 170–71, and expressed concern that deals brought in by an ISC not included on an amendment would not be eligible for commissions. App. 124. And N2P worked with Norcom to compile ISC information for inclusion on amendments. *See* App. 149 (Second Amended Complaint Ex. 2 [email from N2P to Norcom with a draft list of referred ISCs for Norcom to review and update. Taking these facts as true and "interpret[ing] [them] in the light most favorable" to Norcom, the parties understood that a separate signed writing was required for Norcom to receive commissions. *McTernan*, 577 F.3d at 526.

## B

Norcom next argues that N2P breached the implied covenant of good faith and fair dealing, which is present in all contracts governed by New Jersey law. *See Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169–70 (3d Cir. 2001). Norcom alleges that N2P breached the implied covenant by: (i) unreasonably terminating the contract to avoid paying commissions; (ii) failing to prepare amendments for referred ISCs; (iii) failing to keep Norcom informed about which referred ISCs signed contracts with N2P to deceive Norcom into believing that those ISCs did not sell N2P's services; and (iv) failing to pay Norcom commissions for the memorialized ISCs.

As to Norcom's first allegation, the District Court correctly determined that N2P had a contractual right to terminate the contract without cause after one year. App. 80 (providing that the contract "shall remain in effect for a period of one (1) year" and "shall

automatically renew on a month-to-month basis unless terminated by either party upon . . . written notice"). Norcom's conclusory allegation that N2P terminated the contract to avoid paying commissions is insufficient to demonstrate bad faith. *See Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006) ("Absent bad motive or intention, decisions a contract expressly permits which happen to result in economic disadvantage to the other party are of no legal significance."). As to Norcom's final allegation, N2P's failure to pay commissions for memorialized ISCs is not, by itself, suggestive of bad faith—it merely suggests breach of contract, the claim Norcom voluntarily dismissed.

Whether Norcom's other allegations plausibly show that N2P acted "with ill motives and without any legitimate purpose to destroy [Norcom's] reasonable expectations" is a closer question. *Elliott & Frantz, Inc.*, 457 F.3d at 329. That N2P negotiated and signed four amendments does not foreclose the possibility that N2P breached the implied covenant by arbitrarily refusing to draft additional amendments for referred ISPs. But Norcom's allegations of bad faith, taken as true, do not cross the threshold from possible to plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At most, the Second Amended Complaint alleges that Norcom initiated referral discussions with certain ISCs and N2P that N2P never included on an amendment. But N2P was not required to prepare an amendment for every ISC that Norcom spoke with (or intended to speak with) on its behalf, and Norcom does not plead facts suggesting that N2P accepted those referrals by contracting with those ISCs. *See, e.g.*, App. 161 (Second Amended Complaint Ex. 29 [email from Norcom that it plans to speak with Allied Global

8

about becoming an N2P agent]); App. 165 (Second Amended Complaint Ex. 31 [email from Norcom asking N2P to add Sandler Partners to an amendment because Sandler "discuss[ed] the opportunity" with Norcom]). N2P's failure to immediately assent to Norcom's requests for amendments does not amount to bad faith, nor do disputes as to whether Norcom referred certain ISCs in the first place. And Norcom does not provide any factual support for its assertion that N2P deceived it about which referred ISCs sold N2P's services. We "need not credit a complaint's bald assertions," and we do not here. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).[6]

Even if the contract granted N2P complete and unilateral discretion to prepare amendments, Norcom pleads no plausible factual allegations that N2P exercised that discretion "arbitrarily, unreasonably, or capriciously." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). Instead, N2P furthered its own business interests by waiting to prepare amendments until it had contracted with an ISC. *See, e.g.*, App. 123 (Second Amended Complaint Ex. 15 [email from N2P explaining that it hasn't "gotten a single deal yet" and telling Norcom "[l]et's bring in a deal and we'll get everyone on the next addendum"]). Absent non-conclusory allegations of "bad motive or intention," N2P's "discretionary decisions that happen to result in economic disadvantage" to

---

[6] Norcom's Second Amended Complaint includes a list of ISCs that it claims it referred to N2P but which were not included on any signed amendments. Second Amended Complaint Ex. 35. But Norcom fails to plead any facts about the vast majority of these ISCs, and we need not take as true Norcom's assertion that it referred these ISCs without more. *See Morse*, 132 F.3d at 906.

9

Norcom do not plausibly allege a breach of the implied covenant. *Wilson*, 773 A.2d at 1130.

## C

Norcom finally argues that the District Court erred in dismissing its unjust enrichment claim. We disagree because "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982). Norcom recognizes this but contends that it challenged the contract's validity by seeking recission for unconscionability. But the District Court held the contract was not unconscionable. *Norcom*, 2021 WL 1153140, at *6. Norcom does not challenge that ruling on appeal, so the contract's validity is no longer in dispute.[7]

Norcom also contends that it can recover under an unjust enrichment theory for referred ISCs not memorialized on an amendment to the contract because those ISCs were not "expressly covered" by the contract. Norcom Br. 24. But *all* referred ISCs were covered by the contract—any ISCs that were referred but not memorialized simply failed to conform to the contract's requirements for commissions eligibility. Thus, any failure of N2P as to those ISCs could only support a suit for breach. *See Van Orman*, 680 F.2d at 310.

---

[7] Norcom also claims that it is challenging "the validity of N2P's failure/refusal to include certain Norcom recruited ISCs in the amendments." Norcom Resp. Br. 29. But this is not a challenge to the contract's validity; it's an argument for breach, including of the implied covenant of good faith and fair dealing. So this theory cannot save Norcom's unjust enrichment claim.

\* \* \*

For the reasons stated, we will affirm.[8]

---

[8] Because we will affirm the judgment of the District Court, we will dismiss N2P's cross-appeal regarding the New Jersey SRRA as moot.